MONTANA MIN. CO., Limited, v. ST. LOUIS MIN. & MILL. CO. OF MONTANA.

(Circuit Court of Appeals, Ninth Circuit. May 14, 1900.)

No. 567.

1. MINING CLAIMS—CONVEYANCE TO SETTLE DISPUTED BOUNDARY—CONSTRUCTION.

In compliance with a decree for specific performance of a contract made between the owners of two adjoining mining claims in settlement of a suit brought to determine.a disputed boundary between them, the owner of one claim conveyed to the owner of the other the strip in dispute, "together with all the mineral therein contained, together with all the dips, spurs, and angles, and also all the metals, ores, gold and silver bearing quartz rock, and earth therein." *Held*, that such conveyance had no other effect than to fix the surface boundary between the two claims in accordance with the original contention of the grantee, and did not deprive the grantor of any extralateral rights under the ground so conveyed; such boundary being a side line of its claim.

2. SAME—ACTION FOR CONVERSION OF ORE—PLEADING.

A complaint which alleges that plaintiff is the owner of a mining claim, and of all the precious metals contained in any vein or lode, through its entire depth, whose apex is within the surface lines of such claim, and that defendant, the owner of a claim which adjoins one of the side lines of plaintiff's, has mined and removed ore from a vein which has its apex in plaintiff's claim, is sufficient, in the absence of a demurrer thereto, to support a judgment in favor of plaintiff for the conversion of such ore, although it does not specifically allege the facts which show that the boundary between the claims of the parties is a side line of plaintiff's claim, beyond which it has extralateral rights.

3. SAME—POSSESSION OF VEIN.
    Possession of the surface of a mining claim is possession of a vein or lode having its apex within the surface lines of the claim, although, in extending downward, such vein may pass beyond the vertical side lines of the claim, and will support an action of trespass for the removal of ore from such vein, beneath the surface of an adjoining claim.

4. SAME—TRESPASS—DAMAGES RECOVERABLE.
    Where, in an action for the conversion of ore, an injunction has been issued, in compliance with which the defendant has stored certain ore theretofore mined, it is not entitled to have the value of such ore taken into account in reduction of damages unless it proves such value, and returns or tenders the ore to the plaintiff.

In Error to the Circuit Court of the United States for the District of Montana.

Chas. J. Hughes and Cullen, Day & Cullen, for plaintiff in error.

Arthur Brown, Thomas C. Bach, E. W. Toole, and H. P. Henderson, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The defendant in error, the St. Louis Mining & Milling Company of Montana, was the plaintiff in an action brought against the plaintiff in error, the Montana Mining Company, Limited, for trespass and conversion of ore which was alleged to have been taken from the plaintiff's mine by the defendant in the action. The plaintiff in the action owned the St. Louis mining claim, and the defendant owned the Nine Hour mining claim, which adjoined it on the east. The principal contention in the case concerns the construction to be given to a conveyance which was executed by the owners of the St. Louis claim to the owners of the Nine Hour claim. The conveyance was made to settle a controversy that had arisen concerning the easterly boundary line of the St. Louis claim. That was the older of the two claims. At the time of applying for a patent the locators thereof included in their survey a portion of the premises which were claimed by the owners of the Nine Hour claim. The latter made an adverse claim, and brought an action thereupon. Before the cause came on for trial the suit was compromised. It was agreed that, as soon as patent was obtained to the St. Louis claim, the owners thereof would convey back to the owners of the Nine Hour claim the strip of land which was in controversy,—a strip 30 feet wide, to be described by metes and bounds,—"together with all mineral therein contained." The owners of the St. Louis claim, having obtained the patent, refused to make the conveyance. Suit was brought by the owners of the Nine Hour claim for specific performance of the contract. In the complaint in that suit it was alleged that the contract had been made "for the purpose of settling and agreeing upon the boundary line between the said Nine Hour lode-mining claim and the said St. Louis mining claim." A decree was rendered in the suit in favor of the plaintiff therein, and in pursuance thereof a conveyance was executed by the St. Louis Mining & Milling Company, the defendant in error here, conveying to the Montana Mining Company, Limited, the 30-foot strip, by metes and bounds, "together with all the mineral therein contained, together with all the dips, spurs, and angles, and also all the metals,

ores, gold and silver bearing quartz rock, and earth therein," etc. It was shown upon the trial of the case at bar that in the St. Louis claim there are two veins,—one, the discovery vein, running through the claim from end to end, northerly and southerly, and dipping to the east; and a second vein apexing for a long distance within the claim, and dipping easterly underneath the Nine Hour claim, a portion thereof dipping underneath the premises which were conveyed by the deed above referred to. The question involved in the suit is the ownership of the ores of said second vein, which lie beneath the said conveyed premises, and of which the apex of the vein which carries the same lies entirely within the St. Louis claim.

It is contended by the plaintiff in error that by the deed above referred to there was conveyed to it, from the owners of the St. Louis claim, title to all the ores lying beneath the surface of the strip of land therein described, and lying eastward of a vertical plane extended downward on the division line so created between the two claims. We are unable to assent to this contention. In interpreting the conveyance in question, regard must be had, not only to its terms, but to the subject-matter involved and the surrounding circumstances, in order to ascertain the intention of the parties. Said the court in Richmond Min. Co. v. Eureka Min. Co., 103 U. S. 846, 26 L. Ed. 560, "The language used is to be construed with reference to the peculiar property about which the parties were contracting." The court, in the light of the circumstances of that case, held that a line "continued downward to the center of the earth was not a vertical plane, but must be construed as extending the boundary line downward through the dips of the veins or lodes wherever they might go in their course towards the center of the earth." The controversy between the owners of the St. Louis and the Nine Hour claims was one which involved surface lines only. No dispute had arisen concerning the ores beneath the surface. The owners of the Nine Hour claimed nothing more than that the eastern side line of the St. Louis, as it was surveyed, encroached upon their territory. They based their adverse action upon that contention. The compromise was an admission that their claim was just. When the suit was brought for the specific performance of the compromise contract, it was brought by the successors in interest of those who had represented the Nine Hour claim at the time of the compromise. The plaintiffs therein were not the assignees of the contract. They maintained the suit solely as owners of the Nine Hour claim, and upon the theory that the strip of land so contracted to be conveyed was a portion of the Nine Hour claim. All these antecedent circumstances leading up to and culminating in the deed are properly considered in determining what was the intent of the parties to the contract. If the adverse action which was brought by the owners of the Nine Hour claim had gone to trial, and had resulted in a judgment fully sustaining their contention, the result would have been to fix a surface line of division between the two claims, without affecting rights to the ores beneath the surface otherwise than as they are controlled by the mining laws of the United States. The owners of the St. Louis claim would still have retained the right to follow their vein extralaterally in its dip beneath the surface of the strip of land

which was the subject of the conveyance. Upon what theory can it be said that the owners of the Nine Hour claim acquired more by the conveyance which was made to compromise the action than they could have acquired by a judgment in the action itself, fixing the boundary upon the very line which they contended was the true line? It is not to be supposed that the owners of the St. Louis claim intended, by the compromise contract, not only to surrender the whole of their contention concerning the true location of the boundary line, but also to devest their claim of its extralateral rights,—rights that had not been in litigation, and had not been assailed by the owners of the adjoining claim. To manifest such an intention, the terms of the contract and of the conveyance would, under the circumstances, need to be clear and explicit. The use of the words "together with all the minerals therein contained" is not sufficient. Those words so inserted in the contract and in the deed are not more inclusive or more significant than the words universally employed in grants of mining claims, "together with dips, spurs, angles, and also all the metals, ores, etc., therein." Counsel for the plaintiff in error rely upon two decisions which, it is said, favor the construction which they contend for,—the Eureka Case, 4 Sawy. 302, Fed. Cas. No. 4,548, and Stinchfield v. Gillis, 107 Cal. 86, 40 Pac. 98. In the first case two owners of several adjoining claims had fixed and agreed upon a line running northerly for a fixed distance, which should be a division between the claims. It was not a line running with the strike of the vein, but across it. Thereafter a controversy arose concerning the right to mine the ores of the vein at a point beneath the surface further north than the line of division extended. The court held that the line so arbitrarily adopted must be projected as far as the lode extended, and must necessarily divide all that the location upon the surface carried. In that case the parties to the agreement had, by the terms thereof, made so clear their intention to divide their claims by a vertical plane, and to confine their mining rights to either side thereof, that there was no room for construction. In the case of Stinchfield v. Gillis it was held that if the locator of a mining claim should convey a portion of his claim by metes and bounds, without any reservation in his deed of conveyance, his grantee would be entitled to all the gold that might be found within the ground conveyed, in any vein whose apex was within the surface lines of his deed. Said the court (page 90, 107 Cal., and page 100, 40 Pac.), "All that we hold is that inasmuch as the gold in question was within the ground conveyed by Gillis to the plaintiff, and in a vein whose apex was within the surface lines of that ground, it belonged to the plaintiff." We do not see that either case affords light upon the proposition involved in the case at bar. Upon consideration of all the circumstances, we entertain no doubt that it was the purpose of the contracting parties to fix a boundary line between the two mining claims, reserving to each claim the rights that would have attached if the boundary line had been settled without controversy; and the language of the contract and of the deed sustains that conclusion.

It is earnestly contended that the complaint does not state a cause of action, for the reason that it appears therefrom that the vein which

the defendant in error claims the right to pursue under the surface so conveyed to the plaintiff in error is not the discovery vein, and that there is no allegation that the discovery vein runs in any particular direction, or that its strike would intersect the end lines, or that it runs lengthwise of the claim, rather than across, or that it dips in any given direction, and that for want of these allegations the complaint wholly fails to show a right in the defendant in error to pursue beyond its vertical side lines the vein from which the ores in controversy were taken. It is true that the complaint does not mention the direction of the discovery vein or its dip. It contains the allegation, however, that the defendant in error is the owner of, and in the possession of, the St. Louis quartz lode-mining claim, "and of the quartz, rock, and ore and precious metals contained in any and all veins, lodes, and ledges of mineral-bearing rock, through their entire depth, the tops or apices of which lie within the surface lines of the said fractional portion of said St. Louis lode-mining claim." It describes the mining claim by metes and bounds, and shows that it is about 1,500 feet in length by nearly 600 feet in width. The description closes with these words: "Said lots, Nos. 54 and 55A, extending 1,500 feet in length along said St. Louis vein or lode." It alleges that the strip of land beneath the surface of which the ores in controversy were mined lies east of the east side line of the claim. It alleges that the dip of one of the veins, having a portion of its apex inside of the surface of the St. Louis claim, is to the east, and dips under and beneath the 30-foot strip of the Nine Hour claim, and proceeds to allege that from said vein so apexing within the St. Louis claim, and extending beneath the Nine Hour claim, the ores in controversy have been taken by the plaintiff in error. No motion or demurrer was filed to the complaint, but the plaintiff in error answered upon the merits.

In Walrath v. Champion Min. Co., 19 C. C. A. 328, 72 Fed. 978, this court said:

"The act of 1872, in granting all other veins that were within the surface lines of previous locations, did not create any new lines for such other veins, nor invest the court with any authority to make new end lines for such other veins. * * * When the end lines of a mining location are once fixed, they bound the extralateral rights to all the lodes that are thereafter found within the surface lines of the location."

In Del Monte Min. Co. v. Last Chance Min. Co., 171 U. S. 89, 18 Sup. Ct. 908, 43 L. Ed. 86, it was said:

"Our conclusions may be summed up in these propositions: First. The location as made on the surface by the locator determines the extent of rights below the surface. Second. The end lines, as he marks them on the surface, with the single exception hereinafter noticed, place the limits beyond which he may not go in the appropriation of any vein or veins along their course or strike. Third. Every vein, 'the top or apex of which lies inside of such surface lines extended downward vertically,' becomes his by virtue of his location, and he may pursue it to any depth beyond his vertical side lines, although in so doing he enters beneath the surface of some other proprietor. Fourth. The only exception to the rule that the end lines of the location as the locator places them establish the limits beyond which he may not go in the appropriation of a vein on its course or strike is where it is developed that in fact the location has been placed, not along, but across, the course of the vein. In such case the law declares that those which the locator

called his side lines are his end lines, and those which he called end lines are in fact side lines."

Upon the expressions of the supreme court just quoted, and upon the assumption that the locator of a mining claim has, unless the contrary be shown, complied with the law in locating his claim, the defendant in error contends that the presumption arises that the discovery vein in this instance runs lengthwise with the claim, and not across the same. This contention it is unnecessary here to consider. We find in the complaint the distinct allegation that the defendant in error owns all the precious metals contained in any vein or lode of mineral-bearing rock, through their entire depth, whose apex is within the surface of the St. Louis quartz lode-mining claim, and the further averment that the ores in controversy were mined from a vein which so apexes within the surface of the claim. These averments are sufficient to show that a cause of action existed, and are sufficient to sustain the judgment.

It is contended that the court erred in refusing to instruct the jury, at the request of the plaintiff in error, that the defendant in error was not in such possession of the vein as to maintain the action of trespass. It is urged that the possession of the apex of the vein in the surface of the St. Louis claim was not the actual possession of the vein, as it extended beneath the surface of the Nine Hour claim. We are able to discover no reason why the actual possession of the surface of a mining claim does not extend to all that belongs to the claim. Such a possession is not constructive, but actual. Said the court in Mining Co. v. Cheesman, 116 U. S. 533, 6 Sup. Ct. 483, 29 L. Ed. 713:

"It is obvious that the vein, lode, or ledge of which the locator may have 'the exclusive right of possession and enjoyment' is one whose apex is found inside of his surface lines extended vertically; and this right follows such vein, though in extending downward it may depart from a perpendicular, and extend laterally outside of the vertical lines of such surface location."

In Pardee v. Murray, 4 Mont. 234, 2 Pac. 16, it was held that possession of the surface is possession of all veins or lodes whose apices are within such surface lines. Said the court (page 277, 4 Mont., and page 17, 2 Pac.):

"The possession of the respondent was sufficient to maintain this action. * * * Possession of the surface of a mining-claim location is possession of all veins, lodes, and ledges, the tops or apices of which are inside the surface lines, although such veins, lodes, and ledges, as they go downward, may extend outside such surface lines."

The case of Hugunin v. McCunniff, 2 Colo. 367, cited by the plaintiff in error, does not sustain his contention. In that case the defendants had conveyed a mine, and delivered a shaft and level in the mine to the vendor of the plaintiffs, retaining a certain other shaft and level in the same lode, not connected with the first. The defendants afterwards took ore from the level and shaft, which they retained. In trespass for the ore so taken, it was held that the plaintiffs had not the actual or the constructive possession of the place from which the ore was taken, for the reason that, throughout the length of the level retained by them, the defendants had actual possession, ex-

tending to all depths and levels from the surface to the center of the earth.

Error is assigned to the refusal of the court to instruct the jury not to include in their verdict the value of certain ores which had been mined, but which had been stored by the defendant therein, under an injunction issued in the action enjoining it from "disposing of, treating, and reducing any ores heretofore removed or extracted from said premises," for the reason that such ores were held subject to the order of the court, and had not been converted to the use of the defendant. There is nothing in the pleadings or in the bill of exceptions to show that such ores had been returned or tendered to the defendant in error, or in any way accounted for; nor was evidence offered for the purpose of definitely fixing the value of such ore, so that the court could have properly instructed the jury to take the same into account. It was for the plaintiff in error, if it desired to have the value of such ores deducted from the amount of the verdict, to have caused the record to show that the ores were offered to, or were left in the possession of, the defendant in error, and to have submitted evidence of their value. But there is another answer to this contention of the plaintiff in error. Although the instruction which was so requested was refused by the court, it does not appear from the bill of exceptions that the court did not, in its charge to the jury, fully and properly instruct upon that branch of the case. The bill of exceptions does not purport to contain all of the charge of the court. It recites but two instructions, and says that the court, "among other things," so instructed the jury. Considering the whole record and all the assignments of error, we find no ground for reversing the judgment, and it is accordingly affirmed.