ST. LOUIS MIN. & MILL. CO. OF MONTANA v. MONTANA MIN. CO.,
Limited.

(Circuit Court of Appeals, Ninth Circuit. October 8, 1900.)

No. 594.

1. MINING CLAIMS—SIDE AND END LINES—SECONDARY VEINS.
   Where the end lines of a mining claim have been established, they remain the end lines as to all veins found within its surface boundaries.

2. SAME—EXTRALATERAL RIGHTS—VEIN CROSSING COMMON SIDE LINE AT ANGLE.
   When a secondary or accidental vein crosses a common side line between two mining claims at an angle, and the apex of the vein is of such width that it is for a given distance partly within one claim and partly

within the other, inasmuch as neither statute nor authority permits a division of the crossing part of the vein the rights of the parties will be determined by the priority of location, and the entire vein considered as apexing upon the senior location until it has wholly passed beyond its side line, without regard to the direction in which the vein dips.

Ross, Circuit Judge, dissenting.

## In Error to the Circuit Court of the United States for the District of Montana.

This is an action originally brought by the St. Louis Mining & Milling Company, a Montana corporation, plaintiff in error, in the circuit court of the United States for the district of Montana, to recover damages for trespass. and the value of certain ores alleged to have been wrongfully appropriated and taken by the Montana Mining Company, Limited, a corporation of Great Britain, defendant in error. After trial by a court and jury, resulting in a verdict for the plaintiff in error in the sum of $23,209, plaintiff in error now brings the suit to this court upon certain assignments of error, which, it alleges, deprived it of a larger verdict. There is practically no contention between the parties as to the facts. The plaintiff in error is the owner of the St. Louis mining claim, situated near Marysville, in the state of Montana; and the defendant in error owns the Nine Hour mining claim, adjoining the St. Louis claim on its easterly side. The St. Louis claim is the older location. It contains two veins, known in the record as the Discovery vein and the Drum Lummon vein. The accompanying map gives the general location of the two claims, and all details of description which need be considered in this opinion:

By way of explanation of the map, it may be stated that the line, E, C, D, is the dividing line between the two claims. The line marked "133-foot plane" is a projected line plane parallel to the southerly line of the St. Louis claim, and 133 feet southerly from the point, C, on the line, C, E. The line marked "108-foot plane" is a similar plane 108 feet from the said point, C, and the line marked "520-foot plane" is a similar plane 520 feet southerly from the northeasterly corner of the St. Louis claim on the line, D, C. The strip of land included within A, B, C, E, is a strip 30 feet wide, called in the record the 30-foot or compromise strip. The arrows show the direction of the dip of the vein to be eastwardly, and underneath the Nine Hour claim. The Discovery vein is not shown upon the map, but it is established by the evidence to have a northeasterly and southwesterly trend, following generally the length of the claim as located. As to the Drum Lummon vein, there is a discrepancy between the complaint and the evidence. The complaint alleges that it enters the easterly line of the St. Louis claim at the point, H, or the 520-foot plane, and departs from the claim at the 133-foot plane at F. The evidence shows a different state of facts, to the extent that it appears therefrom that more of the Drum Lummon vein is within the St. Louis claim to the

north, and that the foot wall does not pass out of the St. Louis claim until a considerable distance southerly of the 133-foot plane, if it does at all. But the case will be considered as if the vein were located according to the allegations of the complaint (and the map so shows it), as the assignments of error herein are based upon such an assumed state of facts. Upon the trial of the cause, the plaintiff in error claimed the right to pursue the Drum Lummon vein extralaterally so long as any part of the apex of the vein was within the boundaries of the St. Louis claim. The defendant in error denied this right in toto, basing such denial upon the following state of facts: When the predecessors in interest of the plaintiff in error applied for a patent to the St. Louis ground, they included the so-called 30-foot strip shown upon the map in the claim. The owners of the Nine Hour claim opposed the issuance of the patent so far as this strip was concerned, asserting that it was a part of the Nine Hour claim. A compromise was entered into, by which the owners of the St. Louis claim agreed to convey to the owners of the Nine Hour claim, upon their receiving a patent, the said 30-foot strip; and this was afterwards done, after suit had been brought for specific performance of the contract. The defendant in error claimed that by this deed, owing to its language and the nature of the transactions leading up to it, the plaintiff in error was foreclosed of the right to pursue the Drum Lummon vein under the said 30-foot strip. The trial court permitted evidence of the value of ores alleged to be appropriated by the defendant in error from the vein as it passed under the Nine Hour claim and the 30-foot strip, between the 520-foot plane and the 108-foot plane, to go to the jury, and charged the jury that the effect of the proceedings had was to make the 30-foot strip a part of the original Nine Hour claim, and that the defendant in error had the same rights therein, and no further rights, than as if it had been originally patented as a part of the Nine Hour claim, and further charged the jury that the line, E, C, was a side line common to the two claims, and that, so long as the Drum Lummon vein apexed entirely within the St. Louis claim, the plaintiff in error could follow it in its dip under the Nine Hour claim, including the 30-foot strip. Upon this the jury rendered a verdict in favor of the plaintiff in error for the sum of $23,209. A writ of error was sued out by the defendant in error to this court, and this court, in Montana Min. Co. v. St. Louis Min. & Mill. Co. (C. C. A.) 102 Fed. 430, sustained the lower court upon these propositions as submitted to the jury, holding the line, E, C, D, as shown upon the map, to be a boundary line between the two claims and a side line of each claim, and granting the plaintiff in error here the right of lateral pursuit under both the 30-foot strip and the remainder of the Nine Hour claim. Hence in this opinion the 30-foot strip will not be treated separately, but will be regarded as part and parcel of the Nine Hour claim. Upon the trial, however, the plaintiff in error further offered evidence to show the value of ores alleged to have been appropriated by the defendant in error, contained in the said Drum Lummon vein between the 108-foot plane and the 133-foot plane. This offer was made—First, as to the portion of the vein between said planes underneath the 30-foot strip; and, secondly, as to the portion thereof under the Nine Hour claim to the easterly of the 30-foot strip. But, for the purpose of applying the principles of law which will control here, these two offers may be considered as one, in accordance with the decision in 102 Fed. 430, supra. The court sustained objections to the evidence offered, and, upon assignments of error based upon these rulings, the case is now before this court.

Arthur Brown, H. P. Henderson, E. W. Toole, and T. C. Bach, for plaintiff in error.

W. E. Cullen, E. C. Day, and W. E. Cullen, Jr., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The assignments of error raise but one question which need now be passed upon, all others having been adjudicated, upon the writ of

error of the defendant in error herein, in the case of Montana Min. Co. v. St. Louis Min. & Mill. Co. (C. C. A.) 102 Fed. 430. The question for present consideration is: When a secondary or accidental vein crosses a common side line between two mining locations at an angle, and the apex of the vein is of such width that it is for a given distance partly within one claim and partly within the other, to whom does such portion of the vein belong? This question does not appear to have ever been directly passed upon by the courts. But, while it is not entirely free from difficulty, the application of well-established principles of law thereto should conclusively determine the question. Two important elements enter into the consideration of mining rights: First, the surface boundaries, defining the rights acquired by reason of a vein or veins apexing within such boundaries; and, second, the extent of underlying mineral deposits attaching to such surface rights.

The defendant in error contends that it is entitled to the vein in its entirety in depth to the easterly of a vertical plane drawn through the line, E, C, upon the theory that the said line is an end line so far as the Drum Lummon vein is concerned, or, if it be determined that the line, E, C, is a side line, that it is entitled to the entire vein in depth to the southerly of the 108-foot plane.

As to the first contention, it is a well-settled proposition that a mining claim can have but two end lines, and that, end lines having been once established, they become the end lines for all veins found within the surface boundaries. Iron Silver Min. Co. v. Elgin Min. & Smelt. Co., 118 U. S. 196, 207, 6 Sup. Ct. 1177, 30 L. Ed. 98; Walrath v. Champion Min. Co., 171 U. S. 293, 307, 18 Sup. Ct. 909, 43 L. Ed. 170. This court has already determined that the line, E, C, D, is a side line common to the two claims (102 Fed. 430), and therefore it cannot be considered an end line for the Drum Lummon vein.

The second contention of the defendant in error involves the construction of section 2322 of the Revised Statutes. That section provides:

"The locator of a mining location * * * shall have the exclusive right to possess and enjoy * * * all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically."

The defendant in error maintains that the words "top or apex" cannot be construed to mean "top or apex or any part thereof," and that, under the strict construction necessary, extralateral rights would not follow when the whole of the apex was not within the surface lines. If this be the correct view of the language of the statute, manifestly neither party herein would be entitled to pursue the vein in depth between the 108-foot plane and the 133-foot plane, since the apex of the vein between those points, while crossing the side line, is not wholly within either claim. For the purposes of illustration, suppose the vein were regular and vertical for the 25 feet between the two planes mentioned, crossing the side line at the same angle. The boundary rights between the parties could not then be determined by the application of a vertical plane extending to the center of the earth along the side line, and 25 feet

in horizontal width, since that would be constructing an end line to that extent, and there is no authority in the statute or in the decisions for any such action. It might be said that the vein could equitably be cut by a plane parallel with and midway between the 108 and 133-foot planes, thus bisecting the portion of the vein in controversy, and giving half of the disputed ground to each claim. But neither is there any authority for such a determination by the court. It would seem, therefore, that by some rule the entire 25 feet should be construed to apex in one of the locations. And as, where the rights of two mining locators are apparently equal with respect to mining ground, the element of priority of location is controlling, preference being generally given to the senior locator (Argentine Min. Co. v. Terrible Min. Co., 122 U. S. 478, 484, 7 Sup. Ct. 1356, 30 L. Ed. 1140), the entire vein would be given to plaintiff in error. If this be the true doctrine when a vein is vertical, why should there be any change in its application when the vein dips? The right of lateral pursuit is a right conferred by statute. It does not depend upon circumstances, and is as absolute as the ownership of a vein apexing within the surface lines, save that it ceases when and at the point that it interferes with the statutory rights of another. In other words, the determination of a rule, and its application to the case before the court, should be the same whether the vein dips towards the junior location or towards the senior location, or does not dip at all. The defendant in error, in support of its contention that the right of extralateral pursuit only remains so long as the entire vein is within the claim, cites the case of Fitzgerald v. Clark, 17 Mont. 100, 42 Pac. 273, 30 L. R. A. 803, the decision in which was affirmed by the supreme court of the United States. 171 U. S. 92, 18 Sup. Ct. 941, 43 L. Ed. 87. But the question here involved was not there considered. It appears that in that case no attention was given to the width of the vein, its crossing of the side line being regarded merely as a point. No mention whatever was made of the width of the vein or of its apex. Reference is also made by the defendant in error to adjudications upon the class of veins called "split veins." But the case under review does not involve a split vein, and a different principle must apply. If, then, in construction of law the vein for the 25 feet in controversy must be either upon the one location or the other, and if the senior locator has priority of title, it would follow that the right of lateral pursuit would remain with the senior locator within a plane parallel to the end line of the senior claim, and up to the point of departure of the apex, or in this case the footwall. It may be said that the application of this rule will sometimes work hardship. It is true that hypothetical cases may be assumed, which, as individual types, may present difficulties in equitable adjudication. But the application of principles sanctioned by judicial authority furnishes the most effective solution of such problems, and will undoubtedly reduce the seeming inequities to a minimum.

Upon the question first propounded in this opinion, therefore, the only deduction which can be made from the foregoing views is that inasmuch as neither statute nor authority permits a division of the

crossing portion of the vein, and the weight of authority favors the senior locator, the entire vein must be considered as apexing upon the senior location until it has wholly passed beyond its side line. It follows that the court below erred in its refusal to admit the evidence offered as to the value of ores taken from the Drum Lummon vein on its dip between the planes designated as the 108-foot and 133-foot planes, and the cause is therefore remanded for a new trial as to damages alleged and recovery sought for conversion of ore between the planes indicated.

ROSS, Circuit Judge. I dissent. The case of Montana Min. Co. v. St. Louis Min. & Mill. Co. (C. C. A.) 102 Fed. 430, referred to in the foregoing opinion, affirmed the existence of extralateral rights in respect to a vein that enters and departs from a side line only of a mining claim, and the judgment in the present case affirms such right on the authority of the decision in the former case. Yet in neither is the point at all discussed by the court, and in the opinion in the former case there is not a word said from which it can be seen that any such point was presented for decision. 102 Fed. 430. The importance of the question, not only to the correct determination of the present case, but in respect to other mining claims, is too manifest to require comment. In the former case a petition for rehearing is now pending, and I think it should be granted, and that case, together with the present one, set down for reargument, to the end that the question as to whether any extralateral rights exist in respect to any vein that enters and departs from a side line, only, be discussed by counsel, and fully considered by the court, before final determination.