BUNKER HILL & S. MINING & CONCENTRATING CO. v. EMPIRE STATE IDAHO MINING & DEVELOPING CO.

(Circuit Court, D. Idaho, N. D. January 22, 1901.)

1. MINES--LOCATION--OVERLAPS.

For the purpose of locating a mining claim with parallel lines, parts of the lines may be within another claim, though within the overlaps the rights of the older claim prevail.

2. SAME--INCLUDING PART OF WIDTH OF VEIN.

The senior location, having within its surface a part of the width of the apex, owns the entire width of the ledge.

McBride & Folsom and Curtis H. Lindley, for plaintiff.
Heyburn & Heyburn, for defendant.

BEATTY, District Judge. The plaintiff, as owner of the King mining claim, brings this action against defendant for possession of an underground portion of its alleged King lode. The defendant alleges ownership of the Viola and San Carlos lodes, and seems to base its rights in the premises upon such ownership, but does not directly so allege. The Viola was located February 20, 1886, the San Carlos April 4, 1886 (both being patented), and the King August 22, 1898. The following plat of the premises, if not strictly accurate, is sufficiently so to illustrate the questions to be decided:

The general course of the ledge is northwesterly and southeasterly, its dip southwesterly, and, while it is very wide, its width is not clearly shown. The boundaries of the King, as located, are shown by the lines indicated upon the plat by the numerals 1–2 and 3–4, but plaintiff disclaims title to those two triangular spaces lying within the Viola and San Carlos. The plaintiff claims so much of the ledge on its dip as lies within the planes, extended, of its two located lines, 1–2 and 3–4, within which planes is the ore body in controversy, and which it is alleged the defendant is wrongfully in possession of and is working.

At the trial the following questions were raised: First, the right of plaintiff, in making its location, to place its stakes and lines upon the defendant's claims, the Viola and San Carlos; second, the respective rights of the Viola and San Carlos, which are parallel to and adjoining each other, each covering different parts of the apex of the ledge along its course, and, incidentally thereto, the width of the ledge; third, the rights of the King.

1. If there were no judicial rulings upon the question, I should doubt the right of a locator to place any of his stakes or lines upon another's claim. It seems an anomaly that one can strengthen his defective title by simply assuming to use the property of another, to which he has no claim whatever. It is said that it is only to make his lines, where crossed by the ledge, parallel, and that it takes nothing from the other claimant. If it takes nothing from the other, how can it add anything to his right, and how can it make his lines parallel, when it only makes the line he owns parallel with a line another party owns? Upon this question contradictory authorities, including those of the land department, are cited; and it is contended that, as to patented claims, no authority supports the plaintiff's contention, and that the intimation of the Del Monte Case is against it. But this is not a controlling question in this case, nor is it important in any; for the law seems settled that, when the ledge enters an end line of a claim, a parallel line will be supposed to exist, or be judicially constructed, at the point where the ledge passes out of the claim, whether it be a side or an end line. Moreover, even if the King is void as to the overlapping portions, this would not render the balance of the claim void. But, without entering into an analysis of the authorities, I think they are such that it must be held that the plaintiff was justified in making the location of the King as it did.

2. The Viola and San Carlos are parallel to each other, are located along the course of the ledge, and each has within its surface a portion of the apex. The Viola, being the older, would, by the weight of authority, take the whole ledge. If this court had any doubts on that proposition, it still would be controlled by the late decision in St. Louis Min. & Mill. Co. v. Montana Min. Co., 104 Fed. 664, by the circuit court of appeals of this circuit. The wisdom of the decision is illustrated in this case; for, if a ledge can thus be divided longitudinally between two parallel claims, a locator could do what defendant claims in this case,—so locate two parallel claims upon the same apex as to have them follow the ledge upon oblique

dips in different directions, thus taking the ledge on the underground for a much greater length than owned of the apex, which is in direct conflict with that vital principle of the mining law, the parallelism of those lines or planes which cross the ledge. From such a construction of the law a surprising result must follow, which may be illustrated by this case. If the Viola owns only that part of the apex within its surface lines, and the San Carlos the rest, it must follow that the two claims would own, underground, like portions of the ledge, and the surface dividing line of the claims must be continued down the ledge parallel to its dip. The Viola would take that part of the ledge north of this dividing line, but on an oblique dip southwesterly, between the planes A–B and C–D, while the San Carlos would take that part of the ledge south of such dividing line, also on an oblique dip southerly, between the planes E–F and G–H, or almost at right angles to the dip of the Viola, while the King would take the ledge on the Viola side within the lines the plaintiff claims, and on the San Carlos side it would be restricted within the east line of the San Carlos, the line E–F. If this would not perplex the mine owner, it certainly would his engineers who should attempt to divide the ledge underground into such parts. There can be but one reasonable solution of this perplexing problem, and that is that the senior location, having within its surface a part of the width of the apex, shall own the entire width. The Viola, being senior to the San Carlos as well as to the Likely and Skookum, owns, as to all those claims, the entire ledge. This being so, the great width of the ledge claimed loses its importance; for, even if it extends to the two last-named claims, it is still owned by the Viola. The ledge, or, rather, the ore-bearing zone, is very wide, with a very distinct foot wall, but without any developed hanging wall. Thus far it is evident that the foot wall was the center of action and of the force which created it, and so crushed the hanging country into fragments as to prepare the various irregular receptacles for the deposit of the ore found in detached and very irregular bodies. A limit must be reached, where the creating cause of these cavities in the formation ceased to operate, and that limit would be the limit of the mineralized zone. It is most probable that no distinct hanging wall exists, but, until one is developed, the limits of the ore-bearing section should measure the width of what, in law, is the ledge. It cannot be admitted that this is as great as contended for by defendant. The evidence in the case does not justify the conclusion that it extends as far south as the Likely claim, but, even if it did, in view of the seniority of the Viola the result would not be changed.

3. There is no dispute that the easterly line of the King claim is legally laid, and that the ledge passes through it. Where the ledge crosses the western boundary line, whether it be the line as located, 3–4, or the easterly line, A–E, of the Viola, another line parallel to the first, 1–2, will measure its rights. Under some circumstances it might become important as to what part of the ledge should be fixed as the point for the establishment of the parallel line. Generally, I should say that the center of the ledge should be such point, but as in this case the Viola has no rights on the underground por-

tion of the ledge east of the prolonged plane passing through its east line, A–E, it is immaterial at what point in the ledge this westerly line of the King is fixed, so it does not intrude upon the rights of the Viola by passing beyond the plane of its said east line.

The defendant, by his last brief, asks the application of the doctrine that the owner of the surface owns all beneath it until it is shown to belong to another. This I consider applicable only when there is doubt as to what apex an underground body of ore may belong. While in this case there are no workings from the apex of the ledge in the King to the ore body in question, there is no doubt that all the ore found within its lines 1–2 and 3–4, extended, is a part of the ledge apexing within its surface. So certain is this that a court would not hesitate to protect such ore bodies pending the necessary work to prove the fact. It is therefore concluded that the plaintiff is entitled to all of the ledge lying between the east boundary line prolonged of the King and the east line of the Viola, to its south corner; thence southerly on a line parallel with said east line of the King, or, as described by the above plat, between the planes of the lines, 1–2, prolonged, and A–E and E–4, prolonged. Judgment is therefore ordered for the plaintiff for possession of the ground in dispute, and for its costs to be taxed. The question of the amount of damages due plaintiff is, by special agreement of counsel and the order of the court, reserved for future trial and settlement.