## UNITED STATES MIN. CO. v. LAWSON et al.

(Circuit Court of Appeals, Eighth Circuit. November 23, 1904.)

1. FEDERAL COURTS—EQUITY JURISDICTION—SUIT TO QUIET TITLE.

The enlarged remedy given by Rev. St. Utah 1898, §§ 2915, 3511, which authorize a suit to quiet title to be maintained without any previous adjudication of title in an action at law, and without reference to possession, may be enforced in a federal court of equity sitting in that state when the complainant is in possession and the defendant is out of possession, or when both parties are out of possession, as in either case there is no adequate and complete remedy at law.

2. SAME—MINING CLAIM—POSSESSION.

Where the owner of a mining claim is in possession of its surface, claiming title to the entire claim, his possession, in legal contemplation, extends to everything which is a part of the claim, whether vertically beneath its surface or within its extralateral rights; and a bill to quiet title which alleges such ownership and possession in complainant is not insufficient as showing an adequate remedy at law because it further alleges that defendant has, through underground workings, wrongfully entered upon and removed ore bodies beneath the surface of the claim, and threatens to extend his workings therein.

3. MINING CLAIMS—EXTRALATERAL RIGHTS—INTEGRAL CHARACTER OF VEIN.

Where two or more mining claims longitudinally bisect or divide the apex of a vein, the senior claim takes the entire width of the vein on its dip, if it is in other respects so located as to give a right to pursue the vein downwards outside of the side lines.

4. SAME—SENIORITY IS DETERMINED BY ORDER IN WHICH THEY WERE LOCATED

In respect of conflicting mining claims, seniority is determined by the order in which they were located, whether they have been patented or remain unpatented.

5. SAME—CONFLICT USUALLY, BUT NOT ALWAYS OR NECESSARILY, AWARDED TO SENIOR CLAIM.

While the area in conflict is usually awarded to the senior claim, it is not always or necessarily so, because acts or circumstances entirely consistent with the true order of location may have intervened, which require that this area be awarded to a junior claim.

6. SAME—ESTOPPEL—MATTERS CONCLUDED BY PATENT.

Where application for a patent is made by the owner of one of two overlapping claims, the issuance of a patent to him including the area within the overlapping boundaries is necessarily a determination that at the time of the proceedings such area is a part of that claim; but it does not necessarily determine the priority of location, and, where it does not appear that such question was put in issue and actually decided in the course of the patent proceedings, the owner of the other claim is not estopped from asserting the priority of his claim in a subsequent controversy respecting extralateral rights, which were not involved in the proceedings for a patent.

[Ed. Note.—Conclusiveness of patent to mining claims, see note to Bunker Hill & S. M. & C. Co. v. Empire S. I. M. & D. Co., 48 C. C. A. 674.]

Appeal from the Circuit Court of the United States for the District of Utah.

See 115 Fed. 1005.

This is a suit to quiet the title to four mining claims in the West Mountain Mining District, Utah, and to bodies of ore beneath their surfaces. The allegations of the bill are briefly these: Complainant owns the Jordan Extension, Grizzly, Northern Light, and Fairview claims, and also the bodies of ore vertically beneath their surfaces, and is in possession of these claims and engaged in working them, with two other claims hereinafter mentioned, as one

134 F.—49

property for mining purposes. Defendants claim to own the underlying ore bodies as parts of veins or lodes which have their apices within the surface boundaries of adjacent claims belonging to and in the possession of defendants. Under their claim of ownership, defendants, through underground workings, have wrongfully entered the underlying ore bodies in complainant's Jordan Extension, Grizzly, and Northern Light claims, have extracted therefrom large quantities of valuable ore, and are threatening to continue to extract ore therefrom and to extend their underground workings and mining operations to the remaining underlying ore bodies, including those beneath the surface of the Fairview claim. If any ore body beneath the surface of the Jordan Extension, Grizzly, Northern Light, or Fairview is part of a vein or lode dipping or extending into such claim from a claim of the defendants, it is part of a vein or lode which has its apex in the Old Jordan and Mountain Gem mining claims, which are owned by and in the possession of the complainant, and such ore body is within the extralateral rights incident to the last-named claims. Defendants' claim of ownership of such underlying ore bodies is false and unfounded in fact, and constitutes a cloud upon complainant's title. The prayer of the bill is that the title of complainant to the four claims and to the underlying ore bodies be quieted, and that defendants be perpetually enjoined from asserting any claim thereto and from extracting any ore therefrom. A demurrer to the bill on the ground that it discloses that complainant has an adequate remedy at law was overruled.

The answer of defendants specifically denies the allegations of the bill, excepting those relating to diverse citizenship, and contains affirmative allegations substantially as follows: Defendants are the owners and in the possession of the Kempton and Ashland mining claims, which are adjacent to the Jordan Extension, Grizzly, Northern Light, and Fairview claims of complainant. The only ore bodies in complainant's said claims are parts of veins or lodes which have their apices within the Ashland and Kempton claims of defendants, and which, on their dip beneath the surface, extend toward and through complainant's claims. Defendants entered these ore bodies and extracted and removed ore therefrom, as they were and are lawfully entitled to do, in pursuance of their right under the mining laws of the United States to follow extralaterally such veins or lodes on their dip.

As presented in the large volume of testimony which was taken, the controversy may be summarized in this manner: The Old Jordan, Mountain Gem, Kempton, Ashland, Jordan Extension, Northern Light, Grizzly, and Fairview are contiguous mining claims in the West Mountain Mining District, Utah, the Kempton and Ashland partially separating the surfaces of the Jordan Extension, Grizzly, Northern Light, and Fairview from the surfaces of the Old Jordan and Mountain Gem. The apex of a stratum of limestone, the strike of which is in a southwesterly and northeasterly direction, is longitudinally bisected or divided by the Old Jordan, Mountain Gem, and Kempton. The southerly side lines of the Kempton, as patented, are in part coincident with the northerly side lines of the Old Jordan and Mountain Gem, as patented, and the greater part of the width of the apex of the limestone is south of the lines so dividing the patented ground and is within the surface boundaries of the Old Jordan and Mountain Gem. The limestone is from 100 to 200 feet in width, is confined between well defined walls of quartzite, dips northwesterly at an angle of about 30 degrees, passes beyond the northerly side lines of the Old Jordan and Mountain Gem, and extends, on its dip beneath the surface, through the Kempton, Ashland, Jordan Extension, Grizzly, Northern Light, and Fairview. The ore bodies in dispute are within the stratum of limestone, and vertically beneath the surfaces of the four claims last named. The complainant owns the Old Jordan, Mountain Gem, Jordan Extension, Grizzly, Northern Light, and Fairview, and the defendants own the Kempton and Ashland. The parties are in possession of the surfaces of their respective claims, and are engaged in working them extensively for mining purposes. The evidence was chiefly directed to the question whether or not the stratum of limestone constitutes a single broad vein or lode of mineral bearing rock. Complainant insisted, and its evidence tended to show, that this stratum is such a single vein or lode, while the defendants insisted, and their evidence tended to show, that the stratum embraces several distinct and

independent veins or lodes; that one such vein or lode, called a "bedded vein," has its apex within the surface lines of the Kempton, extends on its strike in the direction of the Kempton end lines, passes on its dip beneath the surface beyond the northerly side line of that claim, and through the Jordan Extension, Ashland, Northern Light, Grizzly, and Fairview; that another distinct and independent vein or lode, called the "Ashland cross fissure," and of which the bedded vein is claimed to be a lateral continuation or appendage, has its apex in the Ashland, passes on its dip beneath the surface beyond the northwesterly side line of that claim, and through the Northern Light, Grizzly, and Fairview, and that the ore bodies in controversy are parts of the two veins or lodes, the apices of which are within the Kempton and Ashland. In the assertion of the extralateral rights intended to be set forth and sustained by their answer and evidence, the defendants have extended their underground workings and mining operations into the ore bodies in dispute and have removed some of them, but others are as yet in place and undisturbed including those underlying the surface of the Fairview.

The court dismissed the bill, but filed no findings of fact or opinion disclosing under what view of the facts or of the law the decree of dismissal was rendered.

William H. Dickson and George Sutherland (A. C. Ellis, A. C. Ellis, Jr., Waldemar Van Cott, and E. M. Allison, on the brief), for appellant.

Ogden Hiles and Charles J. Hughes, Jr. (L. R. Rogers, on the brief), for appellees.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

VAN DEVANTER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The elements of federal jurisdiction being present, a right of action created or enlarged by the laws of a state and made enforceable in its courts of general jurisdiction is equally enforceable in the federal courts sitting in that state; but, notwithstanding the procedure prescribed by the laws of the state, the enforcement in the federal courts can be by suit in equity only where there is not a plain, adequate, and complete remedy at law, according to the distinction between actions at law and suits in equity prevailing in those courts. Rev. St. § 723 [U. S. Comp. St. 1901, p. 583]; Clark v. Smith, 13 Pet. 195, 10 L. Ed. 123; Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52; Reynolds v. Crawfordsville Bank, 112 U. S. 405, 5 Sup. Ct. 213, 28 L. Ed. 733; Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873; Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358; Wehrman v. Conklin, 155 U. S. 314, 15 Sup. Ct. 129, 39 L. Ed. 167; Prentice v. Duluth, etc., Co., 7 C. C. A. 293, 297, 58 Fed. 437; Darragh v. Wetter, etc., Co., 23 C. C. A. 609, 78 Fed. 7; Gillis v. Downey, 29 C. C. A. 286, 291, 85 Fed. 438; Sawyer v. White, 58 C. C. A. 587, 122 Fed. 223.

The laws of Utah give a right of action in the courts of that state to quiet the title to real property without any previous adjudication of the title in an action at law, and without reference to the possession. Rev. St. 1898, §§ 2915, 3511. This enlarged right is enforceable by a suit in equity in the federal courts when the complainant is in possession and the defendant is out of possession, or when both parties are out of possession, because in either case there is no adequate and

complete remedy at law. Holland v. Challen, and Wehrman v. Conklin, supra.

It is objected that the present bill shows that the ore bodies in dispute are in the possession of the defendants, and not of the complainant, and therefore that the latter has an adequate and complete remedy at law. The objection is untenable. Where the true owner of a mining claim is in possession of its surface, claiming title to the entire claim, his possession in legal contemplation extends to everything which is part of the claim, whether vertically beneath its surface or within the extralateral right granted by Congress, which is not in the actual possession of another holding adversely. Clarke v. Courtney, 5 Pet. 319, 354, 8 L. Ed. 140; Hunnicutt v. Peyton, 102 U. S. 333, 368, 26 L. Ed. 113; Montana, etc., Co. v. St. Louis, etc., Co., 42 C. C. A. 415, 420, 102 Fed. 430; Empire State, etc., Co. v. Bunker Hill, etc., Co., 58 C. C. A. 311, 315, 121 Fed. 973; Last Chance Mining Co. v. Bunker Hill, etc. Co. (C. C. A.) 131 Fed. 579, 583. The bill states that the complainant is the owner of the claims of which the ore bodies in dispute are part, and is in possession of these claims and engaged in working them as one property for mining purposes. This is a sufficient allegation of complainant's possession of the ore bodies as well as of the surfaces of the claims. The further statement that the defendants, through underground workings, wrongfully entered the ore bodies and extracted ore therefrom, and are threatening to extend their underground workings and to continue the extraction of ore, even if deemed an admission or allegation of an ouster or dispossession of the complainant in respect of the ore bodies actually embraced in the defendants' underground workings, leaves the allegation of the complainant's possession unimpaired in respect of the ore bodies which have not been penetrated by defendants' underground workings but remain in place and undisturbed.

The principal purpose of the present suit is to obtain a determination of the adverse claim to the remaining ore bodies, not merely to recover the possession of the underground workings and chambers from which the defendants have removed the ore, or to recover the value of the ore removed. Being itself in possession of the remaining ore bodies, and the defendants being out of possession, the complainant has no adequate and complete remedy at law. The case of Boston, etc., Co. v. Montana, etc., Co., 188 U. S. 632, 23 Sup. Ct. 434, 47 L. Ed. 626, relied upon by the appellees, is distinguishable from this because in that case there was no allegation that the complainant was in possession or that both parties were out of possession, and the suit was not one to quiet title, but to recover for ores extracted and to enjoin further trespass.

A careful examination and consideration of the evidence clearly convinces us that the stratum of limestone constitutes a single broad vein or lode of mineral bearing rock extending from the quartzite on one side to the quartzite on the other. The limestone has been profoundly broken, altered, and mineralized, and has thereby obtained an individuality which, apart from other differences, clearly distinguishes it from the neighboring rock. There is a local absence of ore in places, a continuous occurrence of it in others, and a seeming local occur-

rence of it in still others, but the ore bodies are not separated, one from another, by any defined boundaries. As in Eureka Consolidated Mining Co. v. Richmond Mining Co., 8 Fed. Cas. 819, 825 (No. 4,548), they are parts of one greater deposit, which permeates, in a greater or less degree, with occasional intervening spaces of barren rock, the whole mass of limestone. As shown by extensive exploration and actual mining, the mineralization has been so general that its only defined limits are the quartzite walls which bound the limestone, and within it one may reasonably expect to encounter ore by driving or cross-cutting in any direction.

In addition to the many small fissures which exist only in the limestone and extend in every direction, other ore-bearing fissures of approximately a northerly and southerly direction are found in the quartzite, and it is the contention of the defendants that these extend through the limestone, that its mineralization is due to them and occurred at the same time and in the same manner as did the deposition of the ore in them, and that the ore bodies in the limestone are lateral continuations or appendages of these cross-fissure veins. Of this it is sufficient to say that, whatever may have been the mineralizing process, the alteration and mineralization of the limestone were so general and extensive as to convert it into a single broad vein or lode within which the cross-fissure veins are without defined boundaries, and so far lose their identity that they cannot be distinguished from the larger ore bodies therein. The ore in the quartzite is inconsiderable in amount, and is confined to these fissure veins, but it is not so in the limestone. In the evidence for the defendants it is conceded that there are no walls separating the cross-fissures from the bodies of ore in the limestone; but it is attempted to be shown that the ore in the fissures, and especially in the Ashland fissure, is distinguishable because its lamination conforms to the strike and dip of the fissure, while the lamination of the ore on either side conforms to the strike and dip of the limestone. We think the evidence for the defendants, as well as that for the complainant, shows that the difference in the lamination is not always discernible, and is an uncertain and unreliable test of the extent and boundaries of the cross-fissures. To illustrate: Mr. Wall, one of the defendants, says the plating of the ore in the limestone is similar in appearance to that of the ore in the fissure where the ore bodies are large and wide, but at a considerable distance from the fissure the structural lines become distinct and parallel to the bedding of the limestone. Mr. Legg, a witness for the defendants, says there is no sharp line of division, and the fissure structure and the influence of the fissure extend for considerable distances from the original fissure. Mr. Neill, another of the defendants' witnesses, says the fissure is entirely destroyed in places within the ore bodies in the limestone. Mr. Moorehouse, also a witness for the defendants, says the Ashland fissure has a width in the quartzite of not exceeding 3 feet, and, when measured by the difference in the lamination of the ore, has a width in the limestone of 180 feet. The defendants lay much stress upon the testimony of Mr. Holden, a witness for the complainant, who says:

"The Ashland vein can be followed for quite a distance into the Big Jordan (limestone) lode, and can be traced. It is like all of these fissures; it is somewhat difficult to follow through, but the way we do trace them we get a line from the quartzite on either side, or from one. quartzite wall, and follow that line out, but we can't always find the limits of the fissure, which we take to be one of the cross-fissures."

This is far short of a statement that the boundaries of the Ashland, or of any other fissure, are well defined within the ore bodies in the limestone. Particularly is this true when the entire testimony of the witness is considered, because he also says much of the limestone has been mechanically and chemically altered until the entire original stratification or bed structure has disappeared. Our conclusion upon this controverted question of fact is that the ore bodies within the claimed spaces of intersection created by the cross-fissures, including the Ashland, are not susceptible of identification and separation from those in the stratum of limestone, and must be held to be parts of the single broad vein or lode, and not parts of distinct and independent cross-fissure veins.

Where two or more mining claims longitudinally bisect or divide the apex of a vein, the senior claim takes the entire width of the vein on its dip, if it is in other respects so located as to give a right to pursue the vein downward outside of the side lines. This is so because it has been the custom among miners, since before the enactment of the mining laws, to regard and treat the vein as a unit and indivisible, in point of width, as respects the right to pursue it extralaterally beneath the surface; because usually the width of the vein is so irregular, and its strike and dip depart so far from right lines, that it is altogether impracticable, if not impossible, to continue the longitudinal bisection at the apex throughout the vein on its dip or downward course; and because it conforms to the principle pervading the mining laws, that priority of discovery and of location gives the better right, as is illustrated in the provision giving to the senior claim all ore contained in the space of intersection where two or more veins intersect or cross each other, and in the further provision giving to the senior claim the entire vein at and below the point of union, where two or more veins with distinct apices and embraced in separate claims unite in their course downward. Rev. St. § 2336 [U. S. Comp. St. 1901, p. 1436]. We recognize the force of an opinion delivered by a learned judge in this circuit, wherein it was held that the right to pursue a vein downward outside of the side lines is dependent upon the inclusion within the claim of the entire width of the apex, and that, where two collateral locations bisect the apex, neither takes any part of the vein not vertically beneath its surface. Hall v. Equator Mining & Smelting Co., Transactions Am. Inst. Min. Eng., Vol. 12, p. 418. But the rule which we have stated seems to us to be sustained by the better reason as well as the weight of authority. Argentine Mining Co. v. Terrible Mining Co., 122 U. S. 478, 484, 7 Sup. Ct. 1356, 30 L. Ed. 1140; Bullion, etc., Co. v. Eureka, etc., Co., 5 Utah, 3, 49, 55, 11 Pac. 515; St. Louis, etc., Co. v. Montana Mining Co., 44 C. C. A. 120, 123, 104 Fed. 664, 56 L. R. A. 725; Empire State, etc., Co. v. Bunker Hill, etc., Co., 52 C. C. A. 222, 114 Fed. 417; Last Chance Mining Co. v. Bunker

Hill, etc., Co. (C. C. A.) 131 Fed. 579; Empire State, etc., Co. v. Bunker Hill, etc., Co. (C. C. A.) 131 Fed. 591.

Of the claims which include portions of the longitudinally bisected apex, those of the complainant, the Old Jordan and Mountain Gem, are in fact older in the order of location, and take the entire width of the vein on its dip or course downward, unless the superiority due to their seniority is avoided by some other and controlling fact. The defendants earnestly insist that their claim, the Kempton, is older in the order of patenting, and, as patented, includes surface areas as to which the three claims, as located, were in conflict by reason of the overlapping of their surface boundaries; that the patenting of these areas as parts of the defendants' claim was a conclusive determination that it was prior in location; and that therefore the complainant is estopped from now claiming the fact to be otherwise. The defendants have the older patent, and we will assume that originally there were surface conflicts, as is insisted, and that the areas in conflict were patented as parts of the claim of the defendants. If the present suit related to the superior right to these surface areas or to any underground or extralateral rights necessarily following or incident to such surface ownership, the claim of estoppel would be well taken, but as the controversy is over a different subject-matter, and it is not shown that the question of priority of location was in fact presented and determined in the course of the patent proceedings, the estoppel cannot be sustained.

Some preliminary observations respecting conflicting mining claims may not be inappropriate. Seniority is determined by the order in which they were located, whether they have been patented or remain unpatented. While the area in conflict is usually awarded to the senior claim, it is not always or necessarily so, because acts or circumstances entirely consistent with the true order of location may have intervened, which require that this area be awarded to a junior claim. An application for a patent to one of the conflicting claims presents the question, which is the superior claim within the overlapping surface boundaries? And the inclusion of the area in conflict within a patent to one of the claims is necessarily a determination that at the time of the patent proceedings such area is a part of that claim. Applying these principles to the facts of the present case, it is seen that the issuance of a patent for the defendants' claim, including therein the areas within the overlapping boundaries, operated as a declaration or determination that within these surface limits the defendants' claim was superior, but not necessarily that it was prior in location. Whether this determination proceeded from a failure of the then owners of the complainant's claims to file an adverse claim, or from an actual inquiry and decision respecting the right of possession (Rev. St. §§ 2325, 2326 [U. S. Comp. St. 1901, pp. 1429, 1430]), is not shown, so it cannot be said, and it is not insisted, that in the course of the patent proceedings there was any actual issue, trial, or decision respecting the order in which the conflicting claims were located, or that the patenting of the areas within the overlapping boundaries was actually rested upon priority of location. Treating the patent proceedings as involving, or as equivalent to, a controversy between these parties or their predecessors in interest and title, the subject-matter of that controversy was the

surface conflict between their respective claims, while the present controversy is over extralateral underground rights, not necessarily following the surface conflict, which is essentially a different subject-matter, and could not have been made the subject of an issue, trial, or decision in the course of the patent proceedings. Montana, etc., Co. v. St. Louis, etc., Co., 42 C. C. A. 415, 417, 102 Fed. 430; 2 Lindley on Mines (2d Ed.) § 730. The case is thus clearly within the rule in respect of estoppel by judgment—that, where the subsequent action involves a different subject-matter, the judgment in the prior action is not conclusive as to every matter which could have been offered and received to sustain or defeat the claim made therein, but only as to matters actually litigated and determined. The subject was exhaustively considered in Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195, which was an action upon county bonds and interest coupons attached thereto. In a prior action upon other coupons attached to the same bonds it had been determined that the bonds were void in the hands of parties who did not acquire them before maturity for value, and, inasmuch as the plaintiff had not been shown to have so acquired the bonds, judgment was rendered against him. In the second action it was held that the prior judgment did not estop the plaintiff from proving that in fact he acquired the bonds before maturity for value. In the course of the opinion it was said by Mr. Justice Field:

"In considering the operation of this judgment it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * * But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue, or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action."

Other decisions to the same effect are Nesbit v. Riverside Independent Dist., 144 U. S. 610, 618, 12 Sup. Ct. 746, 36 L. Ed. 562; Roberts v. Northern Pacific R. R., 158 U. S. 1, 27, 15 Sup. Ct. 756, 39 L. Ed. 873; Southern Pacific R. R. Co. v. United States, 183 U. S. 519, 533, 22 Sup. Ct. 154, 46 L. Ed. 307; Board of Comm'rs v. Platt, 25 C. C. A. 87, 91, 79 Fed. 567; Board of Comm'rs v. Sutliff, 38 C. C. A. 167, 170, 97 Fed. 270; Linton v. Nat'l Life Ins. Co., 44 C. C. A. 54, 57, 104 Fed. 584; Ætna Life Ins. Co. v. Board of Comm'rs, 54 C. C. A. 468, 474, 117 Fed. 82; Last Chance Mining Co. v. Tyler Mining Co., 157 U. S. 683, 687, 15 Sup. Ct. 733, 39 L. Ed. 859. In the last case there was a controversy over extralateral underground rights between two mining claims which were in conflict as

located. Priority of location became the pivotal question, and it was insisted that a determination in the course of prior patent proceedings, that one of the claims was superior within the area in conflict, estopped the owner of the other claim from asserting that it was prior in location. Mr. Justice Brewer, in speaking for the court, said:

"The particular matter in controversy in the adverse suit was the triangular piece of ground, which is not the matter of dispute in this action. The judgment in that case is therefore not conclusive in this as to matters which might have been decided, but only as to matters which were in fact decided."

The estoppel was sustained, but it was because the superiority of right asserted and upheld in the course of the patent proceedings had been expressly rested upon the single fact of priority of location. The facts were these: The owner of one claim applied for a patent, and the owner of the other filed an adverse claim and commenced an action to determine the right of possession to the area in conflict. Rev. St. §§ 2325, 2326 [U. S. Comp. St. 1901, pp. 1429, 1430]. The judgment in that action was for the plaintiff, and the reason why it was held to operate as an estoppel in the subsequent action involving a different subject-matter is shown in the following extract from the opinion, which has reference to the former action:

"The single ground stated in the complaint upon which superiority of right is claimed is priority of location. A judgment for the plaintiff upon such a complaint is necessarily an adjudication in favor of that priority of location. There is no other fact upon which it can rest. It is doubtless true, as suggested, that other questions may be litigated in an adverse suit, but they can be litigated only when they are presented to the attention of the court by some appropriate pleading. The only pleading upon which the case passed to trial and judgment was the complaint, and in that, as we have seen, plaintiff's right to recover is rested upon the single fact of priority of location."

We think it is manifest from the extracts quoted, and from the opinion as an entirety, that the court recognized that superiority of right is not always or necessarily controlled by priority of location; otherwise, the court would not have inquired and determined with such care whether the question of priority of location had been in fact presented and decided in the former action, and would not have conceded that "other questions may be litigated in an adverse suit." As before indicated, it is not shown in the present case whether there was an adverse suit, nor, if so, what questions were in fact presented and determined therein, nor upon what ground the superior right to the area in conflict was asserted and sustained in the patent proceedings. The claim of estoppel was interposed by the defendants, and the burden was upon them to show the existence of every fact essential to sustain it. This they did not do.

The decree is reversed, with a direction to enter a decree for the complainant in conformity to the prayer of the bill.