# THE MONTANA MINING COMPANY (LIMITED), RESPONDENT, *v.* THE ST. LOUIS MINING AND MILLING COMPANY OF MONTANA ET AL., APPELLANTS.

[Submitted October 27, 1897.   Decided January 17, 1898.]

The locator of a mining claim known as the St. Louis lode applied for a patent thereto; the grantors of plaintiff immediately adversed the application, claiming that it included a portion of a claim located by and belonging to them, known as the Nine Hour lode; thereupon an agreement was made by the terms of which the contestants agreed to withdraw that adverse claim, and the applicant for patent agreed to convey to the adverse claimants the premises in dispute, as soon as he should obtain a patent. The patent of the St. Louis lode was issued, and included the premises in dispute; and, thereafter, the plaintiff, being the successor of the contestants, demanded from the defendant, the successor in interest of the applicant, a deed of the premises involved in the controversy and mentioned in the agreement to convey; this demand being refused plaintiff brought suit for specific performance. The deed to the plaintiff conveyed to it the Nine Hour claim. *Held.* 1st. That the deed conveying to the plaintiffs the Nine Hour claim was properly admitted in evidence; it being necessary for the plaintiff ·to show that it was the owner of the Nine Hour claim, before it could claim a conveyance of the premises in dispute, which were in equity a portion of said claim. 2nd. It appearing that the parties to the above agreement were the owners, respectively, of the two mining claims in dispute, the agreement was not against public policy. 3rd. That the defendant, successor of the applicant for patent, having notice of the agreement was bound by the same. 4th. In an action upon a bond to convey, oral evidence concerning the number of obligees in the bond is properly stricken out—the bond speaks for itself. 5th. Copies of conveyances are properly admitted in evidence, when it appears that originals are not within the power or control of the party offering them.

*Appeal from District Court, Lewis and Clarke County. Horace R. Buck, Judge.*

Action by the Montana Mining Company, Limited, against the St. Louis Mining & Milling Company of Montana and another. From a judgment for plaintiff, defendants appeal. Affirmed.

Statement of the case by the justice delivering the opinion.

This is an action for the specific performance of a contract.

The complaint alleges that on the 7th day of March, 1884, the plaintiff's predecessors in interest, namely, William Robinson, John Huggins, Frank P. Sterling, Warren De Camp and John W. Eddy, were the owners of, in possession, and lawfully entitled to the use, occupation, and possession, of a certain portion of the Nine Hour lode mining claim, particularly described in the complaint; that thereafter the defendant Charles Mayger applied to the United States Land Office at Helena for a patent to the St. Louis lode mining claim, owned by the said Mayger, and that in the survey he caused to be made of the said St. Louis lode mining claim he included that part of the Nine Hour lode mining claim described in the complaint, and which is the subject-matter of this litigation; that thereupon the predecessors in interest of plaintiff commenced an action in the District Court of the Third Judicial District of the then Territory of Montana, to determine the right to the possession of said premises, in which action the said Robinson and Huggins were plaintiffs and the said Mayger was the defendant; that while said suit was so pending in said District Court to determine the possession and right to the possession of the mining ground in dispute in this case, and on the 7th day of March, 1884, for the purpose of settling and compromising the said suit, and for the purpose of settling and agreeing upon the boundary lines between the Nine Hour lode mining claim and the St. Louis lode mining claim. the defendant Charles Mayger made, executed, and delivered to the

said Robinson, Huggins and Sterling a certain bond for a deed, whereby, in consideration of the compromise and settlement of the said lawsuit, and the withdrawal of the said protest and adverse claim, and the dismissal of the suit, the said Mayger covenanted and agreed that when he should obtain a patent to the mining ground in dispute in that suit and in this he would make, execute and deliver to the said Robinson, Huggins and Sterling a good and sufficient deed for the same; that thereupon Robinson and Huggins dismissed their suit, withdrew their adverse claim, and performed all the conditions of the bond on their part; that the said Mayger then proceeded with his application, and obtained a patent, but that he gave no notice to the plaintiff, or any of its predecessors in interest, of the obtaining of said patent from the government, until some time in November, 1889; that at the time of the execution of said bond for a deed plaintiff's predecessors in interest were in possession of the said premises, and that they and plaintiff have ever since been, and yet are, in possession thereof, holding and using the same as a part of the Nine Hour lode; that by mesne conveyances the title to the said Nine Hour lode, including the portion thereof above particularly mentioned, and in dispute in this suit, has been conveyed to the plaintiff, and that plaintiff is now the owner thereof; that it is entitled to a conveyance of the said premises from the said defendants in accordance with the bond executed by said Mayger to the predecessors in interest of the plaintiff; that said Mayger, on or about the 10th day of June, 1893, pretended to convey the piece of ground in controversy to the defendant the St. Louis Mining and Milling Company, but that the said company had full knowledge and notice of the making, execution and delivery of said bond for a deed by the said Mayger, and of the rights and equities of the plaintiff thereunder; that the said St. Louis Mining Company has instituted a number of suits in the Circuit Court of the United States, in which it claims that it is the owner of the premises described in the complaint, and also claims the right to recover certain sums of money for ores alleged to have been un-

lawfully extracted from the premises in dispute; that the deed from said Mayger to the St. Louis Mining & Milling Company is a cloud upon plaintiff's title to the premises.

Plaintiff prayed for a decree of court that the defendants execute to it (the plaintiff) a good and sufficient deed to the premises in controversy.

The answer denies all the material allegations of the complaint, and affirmatively alleges that the adverse claim inter posed, as stated above, by the predecessors in interest of plaintiff, to the application of Mayger for a patent, was for the purpose of harassing and hindering the said Mayger in obtaining a patent to his mining claim, and that the bond was given contrary to equity, good conscience and public policy.

The replication denies the new matter contained in the answer.

The case was tried to the court without a jury.   The court made findings of fact, which are substantially as follows:

(1) The predecessors in interest of plaintiff, named in the complaint, were at the time mentioned in the complaint the owners of, in possession, and entitled to the possession, of the Nine Hour lode mining claim, described in the complaint; and and the strip of ground in dispute, called the "compromise ground," was at the time, and thereafter continued to be, a part of the said Nine Hour lode mining claim.

(2) That the bond mentioned in the complaint was executed and delivered by Charles F. Mayger to the parties therein named, by which the said Mayger bound himself to convey to them, or their assigns, the mining ground in dispute, when the said Mayger had obtained a patent therefor; that said bond was given as a compromise and settlement of the controversy as to the land now in dispute, and then in litigation between the parties, as stated in the complaint; and that said bond was for the purpose of compromising a suit, and fixing and determining the boundary line between the Nine Hour lode mining claim and the St. Louis mining claim, as alleged in the complaint; and that said Mayger thereafter did obtain a patent to the premises in dispute.

(3) That the plaintiffs in said adverse mining suit, upon the execution to them of said bond by said Mayger, dismissed their suit, and performed all conditions of the contract on their part.

(4) That at the time of the execution of said bond the predecessors of plaintiff were in the actual possession of the mining ground in dispute, and that they and this plaintiff have ever since remained in the possession thereof, claiming and holding the same as a part of the Nine Hour lode mining claim.

(5) That at the date of the execution and delivery of the said bond it was expressly agreed between the parties thereto that all of the ground lying to the east of the westerly line of the compromise strip should be a portion of the Nine Hour lode mining claim.

(6) That the plaintiff herein is the successor in interest of the said Robinson, Huggins, and Sterling, the obligees named in said bond, and is also the successor in interest of Warren De Camp and John W. Eddy, who were cotenants with the said obligees in said premises at the date of the execution of said bond. .

(7) That the mesne conveyances introduced in evidence on the part of the plaintiff embrace, and were intended to include, the ground in dispute, and conveyed to the respective grantees therein named all of the interest, legal and equitable, which the grantor or grantors had in said premises at the date of the execution thereof; and that it was the intention of the parties to the deed to convey as well their interest to said ground in dispute as every other part and parcel of the said Nine Hour lode mining claim.

(8) That in July, 1893, the plaintiff, as the assignee of the said Robinson, Huggins and Sterling, duly demanded a deed to the ground in dispute from the said defendants, but the said defendants refused to execute such deed, and that no demand was ever made from the said Charles F. Mayger by the plaintiff, or any of its predecessors in interest, prior to July, 1893.

(9) That on the 10th day of June, 1893, the defendant

Charles F. Mayger assumed to convey the said ground in dispute to his codefendant, the St. Louis Mining & Milling Company of Montana, but that at the date of said conveyance the said St. Louis Mining & Milling Company had full notice and knowledge of the equities of the plaintiff in and to the said ground and its possession thereof.

(10) That the defendants wrongfully assert title to the ground in controversy, and thereby cloud the title and estate of the plaintiff therein, and that the plaintiff has a right to have such cloud removed from its title to the ground.

(11) That the court finds all of the issues raised in this case in favor of plaintiff and against the defendants.

As conclusions of law the court found that the plaintiff is entitled to a conveyance from the said defendants for the premises described in said bond and in the complaint herein, known as the "compromise ground;" that the defendants, and each of them, should be enjoined and perpetually restrained from asserting any right, title or interest of any kind or character in or to the ground in dispute, or any portion thereof, and from in any manner interfering with the possession or enjoyment thereof by plaintiff.

In accordance with said findings of fact and conclusions of law, judgment was rendered for plaintiff, from which judgment and an order denying a new trial, the defendants appeal.

*W. W. Dixon, McConnell, Clayberg & Gunn* and *Toole & Wallace,* for Appellants.

The question is fairly presented, whether, under the calls in these deeds and patent of the Nine Hour lode, they could include the thirty-foot strip in question, embraced in the patent to the St. Louis lode, so as to make them competent evidence on the trial of this case. That the objection to this testimony should have been sustained, we cite the court to the following authorities: *Taylor* v. *Holter,* 1 Mont. 685; 3 Washburn R. P., 4th Ed., 404 and 424; *Alabama* v. *Montague,* 117 U. S. 611; *Patentee* v. *N. P. R. R. Co.,* 134

U. S. 163; *Waldin* v. *Smith*, 39 N. W. 82; *Thayer* v. *Finton*, 15 N. E. 615; *Mendel* v. *Whiting*, 31 N. E. 431; *Thaxter* v. *Turner*, 24 Atl. 829; *Young* v. *Cosgrove et al.*, 49 N. W. 1040; *Muldoon* v. *Deline*, 135 N. Y. 150. These authorities are also conclusive as to the inadmissibility of all the testimony tending to show an intention to include the thirty-foot strip in said deeds, to which we have heretofore referred. For this manifest error in the trial court, we insist this case should be reversed. They are also conclusive against all the other deeds conveying the Nine Hour lode claim. (*Carson City, Etc.*, v. *North Star, Etc.*, 73 F. 599.) We also call attention to the testimony objected to by appellants, tending to show the location of the Nine Hour lode, the boundaries, etc., for the reason that the patent to the Nine Hour lode was conclusive of all the antecedent steps necessary to support it, and that, as the patent itself shows, the thirty-foot strip is not included in it. That this testimony was incompetent we refer the court to the following authorities: *Talbott* v. *King*, 6 Mont. 101, 107 and authorities therein cited from the Supreme Court of the United States; also *Smoke House Cases*, 6 Mont. 397; *S., B. M. & M. Co.* v. *Clark*, 5 Mont. 378; *Gwillim* v. *Donnellan*, 115 U. S. 348; *Belk* v. *Meagher*, 104 U. S. 286; and especially *Barden* v. *N. P. R. R. Co.*, 154 U. S. 288. There is another proposition presented by the record in this case, and which appellants claim is fatal to a recovery upon the contract sued on, marked "Exhibit A," and made a part of the complaint. We claim, under the authorities, that this contract is illegal and against public policy. In support of this position we cite the court to the following authorities: *Hannay* v. *Eve*, 3 Cranch 242; *Dial* v. *Hair*, 54 Am. Dec. 176; *Drexler* v. *Tyrrell*, 15 Nev. 114; *Smith* v. *Applegate*, 25 N. J. L. 352. *Sharp* v. *Tees*, 4 Hals. 352; *Pratt* v. *Adams*, 7 Paige 615; *Tatum* v. *Kelly*, 25 Ark. 209; *De Groot* v. *Van Duzer*, 20 Wend. 390; *Mitchell* v. *Cline*, 84 Cal. 409; 1 Pomeroy on Equity Jurisprudence, § 40; *Miller* v. *Ammon*, 145 U. S. 421; *Grey* v. *Reynolds*, 21 N. Y. 771; *Swanger* v. *Mayberry*, 59 Cal. 91; *Ladda* v. *Hawley*,

57 Cal. 51; *Mitchell* v. *Smith*, 2 Am. Dec. 417; *Boyd* v. *Barclay*, 34 Am. Dec. 762; *Bank of Michigan* v. *Niles*, 41 Am. Dec. 575; *Bell* v. *Leggett*, 7 N. Y. 176; *Kennel* v. *Chandler*, 14 Hun. 39; *Connolly* v. *Cunningham*, cited in Greenhood on Public Policy, 446; *George* v. *Proctor*, 66 Led. 240.   There are also various other authorities bearing upon the same propositions to which we refer the court: *Damrell* v. *Meyer*, 40 Cal. 166; *Hudson* v. *Johnson*, 45 Cal. 21; *Auston* v. *Walker*, 47 Cal. 484; *Bull* v. *Shaw*, 58 Cal. 455; *McGregor* v. *Donelly*, 67 Cal. 149; *Spence* v. *Harvey*, 22 Cal. 337; *County Lodge* v. *Gray*, 98 Ind. 288; *U. S.* v. *Trinidad*, 137 U. S. 160; *Kreamer* v. *Earl*, 91 Cal. 112.   Besides this is an action to enforce the specific performance of a contract respecting mining property where laches should not be tolerated.   (*Wolf* v. *Great Falls Water Power & Townsite Co.*, 15 Mont. 44.)   Upon the general question of the statutes of limitation involved in this case, we cite the court to Wood on Limitations, page 108 and note; also pages 109 and 112. (*Phaner* v. *Clark*, 19 Conn. 420; *Bank* v. *Daniels*, 12 Pet. 32, 56; *Peters* v. *Delaplaine*, 49 N. Y. 362.)

*Cullen, Day & Cullen*, for Respondent.

The effect of the bond for a deed, among other things, after the conditions under which it had been given were performed by Robinson and Huggins by the dismissal of the suit and the withdrawal of their adverse claim, was to vest the bare legal title to the "compromise strip" in Mayger while the complete equitable title was in them.   Under such circumstances the vendee is looked upon and treated as the owner of the land and a complete equitable estate has vested in him commensurate with that provided by the contract, whether in fee or for life or for years, and he has all the beneficial interest in it.   (1 Pomeroy's Equity Jurisprudence, Section 368; *DeGuire* v. *St. Joseph Lead Co.*, 38 Fed. 65.)   This equitable estate could be conveyed by deed.   The provisions of the statute in force at the time of the execution of all of the deeds of plaintiff's chain of title, were as follows :   "No estate or

interest in lands  \*  \*  \*  shall hereafter be created  \*  \*  \*
unless by act or operation of law, or by deed or conveyance,
in writing.   (Fifth Division Compiled Statutes, § 217.)   "In-
terest in lands shall be construed to embrace every estate and
interest, present and future, vested and contingent, as above
defined."   (*Ibid* Section 234.)   "Conveyances of land or of
any estate or interest therein may be made by deed, signed by
the person from whom the estate or interest is intended to
pass."   (*Ibid* Section 235.)   That an equitable interest in
land can be conveyed by deed is fully established by the fol-
lowing authorities :   1 Devlin on Deeds, Section 29; Brown
Statute of Frauds, Section 229; *Sims* v. *Killian*, 12 Ired.
252; *Holmes* v. *Holmes*, 86 N. C. 205; *Smith* v. *Burnham*,
3 Sumn. 435; *Hughes* v. *Moore*, 7 Cranch S. C. 176; *Rich-
ards* v. *Richards*, 9 Gray (Mass.) 313; citing also *Green* v.
*Clark*, 31 Cal. 592; *Hilton* v. *Young*, 73 Cal. 196; *Wara* v.
*Dougherty*, 75 Cal. 240; *Allen* v. *Baty*, 6 Pick. 460; *Foss* v.
*Crisp*, 20 Pick. 121; *Stevens* v. *Hollister*, 18 Vt. 294—46
Amer. Dec. 154.   It is then an admitted fact in this case that
by the agreement which placed the "compromise strip" in-
side the boundaries of the St. Louis, the westerly line of that
strip was to be the boundary line between the two claims, and
all east of that line was to remain as it had hitherto been, a
part of the Nine Hour Lode Mining Claim.   The bond which
Mr. Charles Mayger executed in effect admits this, because it
recites that the "compromise strip" comprises "A part of
two certain quartz lode mining claims, known as the St.
Louis Claim and the Nine Hour Lode Claim."   And this
compromise will be rigidly enforced in equity.   "Compro-
mises," says Mr. Beach in his work on Modern Equity, "are
upheld by courts of equity with a strong hand."   (1 Beach on
Modern Equity, Section 43; citing also *McGee* v. *Stone*, 9
Cal. 600; *Richmond Mining Co.* v. *Eureka Mining Co.*, 103
U. S. 139; *Vosburgh* v. *Teator*, 32 N. Y. 566.)   "It is the
policy of the law to allow parties to settle and adjust doubt-
ful and disputed facts between themselves, and when such
matter, which before was uncertain, has been established by

agreement between the parties upon good consideration passing between them, they are not permitted afterwards to deny it.'' ( *White* v. *Spreckles,* 75 Cal. 612; *Knowles* v. *Toothaker,* 58 Maine 172; 3 Washburn on Real Property 87; *Kipp* v. *Morton,* 12 Wend. 127; *Houston* v. *Sneed,* 15 Tex. 307; Sedgwick and Waite on Trial of Title to Land Section 760; 2 Devlin on Deeds, Section 1036; Tyler on Ejectment, page 572; *Idaho Land Company* v. *Parsons,* 2 Idaho 1191.)

Is the contract sought to be enforced contrary to the public policy?

It is not pretended that the government was defrauded in any way in this transaction, but it is contended that the patent for the ''compromise strip'' should have gone to Robinson and not to Mayger, and that to this extent it was fraudulent. If the result of this settlement was to give at once the complete equitable title to the strip to Robinson, to whom it belonged, and ultimately to vest in him the complete legal title to it, and the government was not defrauded in any way, it is difficult to see how the transaction involved any such legal or moral turpitude as would render it void. No question is raised on this record as to the validity of the discovery or location of the Nine Hour Lode by Robinson. If then a proper discovery and location of the Nine Hour was made, the area thus claimed was segregated from the public domain and became the property of the locators. They could sell it, mortgage it or give it away, the whole or any portion of it, if they saw fit. (*Forbes* v. *Gracey,* 94 U. S., 762-766; *Belk* v. *Meagher,* 104 U. S., 279-283; *Manuel* v. *Wulff,* 152 U. S., 505-510; *Black* v. *Elkhorn Mining Co.,* 163 U. S., 445-449.) The question here raised is, so far as we are advised, one of absolutely first impression. In actual practice in obtaining title to mineral lands, it is a matter of frequent occurrence that the applicant and the adverse claimant make an arrangement similar to the one made in this case, whereby the applicant agrees to convey to the adverse claimant some portion of the ground in dispute, after he shall have made his entry, but there is no case holding that such an arrangement is.

valid or invalid. It would seem as if the learned counsel for the defendants have the honor of raising this question for the first time in any court of last resort. As a rule the law upholds the adjustment of disputed matters without recourse to litigation, and settlements are favored in law. (*Hart* v. *Gould*, 28 N. W. 831; *Wills* v. *Neff*, 14 Oregon, 66; *Central Trust Co.*, v. *Wabash, St. L. & P. Ry. Co.*, 29 Fed. 546; *Gaines* v. *Molen*, 30 Fed. 37.) Certainly this transaction, fair upon its face and satisfactory to the parties at the time it was made, cannot be declared void, as being contrary to public policy, unless it is found to contravene some express act of congress upon the subject. (*Meyers* v. *Croft*, 13 Wall. 291; *Davenport* v. *Lamb*, 13 Wall. 418; *Thredjill* v. *Pintard*, 12 How. 24; *Lamb* v. *Davenport*, 18 Wall. 307.) The following cases are cited on the question raised by appellant as to the Statute of Limitations : *Oliver* v. *Hyatt*, 3 How. 411; *Riddell* v. *Whitehill*, 133 U. S. 621; *Speedill* v. *Henna*, 120 U. S. 377; *Jones* v. *Throckmorton*, 57 Cal. 388; *Lemoine* v. *Dunklin Co.*, 38 Fed 567; *De Guire* v. *St. Joseph Lead Co.*, *Ibid.* 65; *Love* v. *Watkins*, 40 Cal. 564; *Gilbert* v. *Sleeper*, 71 Cal. 294; *Speedill* v. *Henrici*, 120 U. S. 127-30-718; *Coulson* v. *Walton*, 9 Pet. 60.

Pemberton, C. J.—There are several assignments of error directed to the action of the court in admitting in evidence the patent to the Nine Hour Lode Claim, and the mesne conveyances of the predecessors in interest of the plaintiff by which they conveyed their interests in said mining claim to the plaintiff.

These muniments of title are objected to because they do not specifically include, as appellants contend, the particular piece of ground in dispute. The patent and conveyances above mentioned all refer to the "Nine Hour Lode Claim" as the description of the premises conveyed. Appellants contend that, as the particular strip of ground in controversy is not included in the Nine Hour Lode Claim patent, and not expressly included in any of the mesne conveyances above

mentioned, but was included in the St. Louis Lode Mining Claim patent, it was error to admit them in evidence.

We think these muniments of title were admissible to prove title to the Nine Hour lode mining claim in the plaintiff. Before the plaintiff could prove that it was entitled to a conveyance of the strip of ground in controversy on the ground that it was in equity a part of the Nine Hour lode claim, it was incumbent on it to prove its ownership of said claim. The patent and mesne conveyances to the Nine Hour lode claim were properly admitted for this purpose.

Counsel for the appellants urge that it was error on the part of the court to admit in evidence the bond for title to the ground in dispute, executed by defendant Mayger to the predecessors in interest of the plaintiff, for the reason that said bond is illegal, because against public policy. This appears to be the principal error assigned in the estimation of counsel for appellants, and seems to be the chief ground upon which counsel base their objections to the evidence admitted in the case, and upon which they insist that plaintiff is not entitled to recover in this case.

Let us examine this assignment, for upon its determination we think the case practically depends. It is not contended that the Nine Hour and St. Louis lode mining claims were not valid mining claims. They both had valid discoveries, and were located according to law. If so, the owners thereof had title,—a grant to them from the government. (*Belk* v. *Meagher*, 104 U. S. 279.) It is conceded that Mayger had fully complied with the law, and was entitled to a patent to the St. Louis lode claim, when he applied therefor. Then, to all intents and purposes, the parties to the bond, at the time it was given, were the owners of the mining ground embraced within the claims above named. If so, they could dispose of their title thereto in any way they pleased, unless they were prohibited from so doing by some statute. What did the parties do? In order to settle a costly and troublesome lawsuit, they entered into a compromise, by which they settled the title among themselves to the ground in dispute, and fixed the

boundary line between their two claims. We are at an utter loss to see how such a contract can be said to be against public policy or good morals. It seems to us to be just such a compromise of difference between the parties as is encouraged in equity. Our attention has not been called to any statute of the United States that prohibits such contracts, and, unless there is some statutory prohibition, we can conceive of no reason in law or equity why the contract in this case should be held to be illegal. (*Gaines* v. *Molen*, 30 Fed. 27.)

The court found that the plaintiff was the owner of the Nine Hour lode claim, as well as the assignee of the bond of defendant Mayger for title to the ground in controversy, and that the defendant company took its deed to the same from defendant Mayger with full notice of the equities of the plaintiff. And we think the finding amply supported by the evidence. The evidence also amply supports the finding of the lower court that the predecessors in interest of the plaintiff were in actual possession of the ground in dispute at the date of the bond for title, and that the plaintiff and its predecessors have been in possession ever since that time.

We think there was no error in the action of the court in excluding or striking out the evidence of Mayger that the bond was executed to all the obligees therein named. The bond was in evidence, and spoke for itself in that respect. The court properly found that the title of all the obligees named in the bond to the ground in dispute had been conveyed to the plaintiff.

The appellants assign as error the action of the court in admitting in evidence copies of certain conveyances. We think a sufficient foundation had been laid to authorize the admission of the copies by showing that the originals were not within the control or power of the plaintiff.

We think that the court properly found that the plaintiff was the owner in equity of the ground in controversy, and was entitled to have the legal title conveyed to it by the defendants.

The judgment and order appealed from are affirmed.

*Affirmed.*

Hunt, J., concurs. Pigott, J., not sitting.