MONTANA MINING COMPANY, LIMITED, *v.* ST. LOUIS MINING AND MILLING COMPANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 402. Argued December 10, 11, 1906.—Decided January 14, 1907.

Where there is a question whether the jurisdiction of the Circuit Court depended entirely on diverse citizenship making the judgment of the Circuit Court of Appeals final, but a petition for writ of certiorari is pending, and the writ of error had been allowed prior to the filing of the record in the first instance, and the case is of such importance as to demand examination by this court, the question of jurisdiction of the Circuit Court need not be determined but the case reviewed on certiorari.

In this case a bond to convey, and a conveyance, made thereafter in pursuance thereof, conveying mining lands in Montana, the title to which was in dispute between the grantor and grantee (owners of adjoining claims), together with all the mineral therein and all the dips, spurs, angles, etc., were construed as not simply locating a boundary between the two claims, leaving all surface rights to be determined by the ordinary rules recognized in mining districts of Montana and enforced by statutes of Congress, but, as conveying all mineral below the surface including that in a vein therein which apexed in the unconveyed land of the grantor.

The common law has been kept steadily in force in Montana and under it a deed of real estate conveys all beneath the surface unless there be words of exception or limitation.

A conveyance of mineral land adjoining land of the grantor which grants all the mineral beneath the surface will not be construed as not granting the mineral in a vein apexing in the grantor's unconveyed land because such vein may extend across the conveyed land to other land belonging to the grantor.

*Quære* whether there would not be a reserved right in the grantor to pass through the conveyed land to reach the further portion of such a vein.

A contract and conveyance of lands and subsurface minerals made in settlement of a dispute will be construed in the light of facts known at the time to the parties rather than of possibilities of future discoveries.

THE litigation between these parties has been protracted through a series of years. A brief history will help to an understanding of the present questions. Prior to 1884 Charles

Mayger had located the St. Louis lode claim in Lewis and Clarke County, Montana Territory, and William Robinson and others had located, adjoining thereto, the Nine Hour lode claim. These claims conflicted. Mayger made application for a patent. Thereupon adverse proceedings were commenced by Robinson and his associates against Mayger in the District Court of the Third Judicial District of Montana. For the purpose of settling and compromising that action on March 7, 1884, a bond was executed by Mayger to the other parties, in which he agreed to proceed as rapidly as possible to obtain a patent, and then to execute and deliver to Robinson a good and sufficient deed of conveyance of a tract described as "comprising a part of two certain quartz lode mining claims, known as the St. Louis lode claim and the Nine Hour lode claim, and particularly described as follows, to wit." Then follows a description of what is known as the compromise ground, a tract including an area of 12,844.5 square feet, "together with all the mineral therein contained." Mayger proceeded to obtain a patent for the St. Louis claim, including the compromise ground, as did also Robinson and his associates, a patent to the Nine Hour claim, omitting the compromise ground. Thereafter the plaintiff in error acquired the interest of Robinson and his associates and the defendant in error the interest of Mayger. The former company demanded a conveyance of the compromise ground in accordance with the terms of the bond executed by Mayger, which, being refused, suit was brought in a District Court of the State, which rendered a decree in its favor. That decree having been affirmed by the Supreme Court of the State, the St. Louis company brought the case to this court, and on October 31, 1898, the judgment of the Supreme Court of Montana was affirmed. 171 U. S. 650. In pursuance of the decree the St. Louis company deeded the tract described in the bond, giving its boundaries, the number of square feet contained therein, and adding, "together with all the mineral therein contained. Together with all the dips, spurs and angles,

and also all the metals, ores, gold and silver-bearing quartz-rock and earth therein, and all the rights, privileges and franchises thereto incident, appended or appurtenant, or therewith usually had and enjoyed; and also all and singular the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining, and the rents, issues and profits therein, and also all and every right, title, interest, property, possession, claim and demand whatsoever, as well in law as in equity, of the said party of the first part, of, in or to the said premises and every part and parcel thereof, with the appurtenances."

Prior explorations, the exact date of which is not shown, but apparently long after the compromise agreement, had disclosed the fact that beneath the surface of this compromise ground there was a large body of ore which, it was claimed, belonged to a vein apexing in the territory of the St. Louis claim. This was not the discovery vein, but a secondary vein, frequently called the Drumlummon vein or lode, whose apex was between the compromise ground and the apex of the St. Louis discovery vein. Some of this ore was mined and removed by the Montana company. On September 16, 1893, a year before the specific performance suit was brought, the St. Louis company filed its complaint in the Circuit Court of the United States for the District of Montana, against the Montana company and several individual defendants, claiming to recover $200,000 for the damages sustained by the trespass of the defendants in removing the ore. In its complaint the St. Louis company alleged that it was a corporation organized under the laws of Montana, and that the Montana company was a corporation incorporated under the laws of the Kingdom of Great Britain, but nothing was said as to the residence or citizenship of the individual defendants.

On November 21, 1898, three weeks after the decision by this court in the specific performance suit, an amended and supplemental complaint was filed, which omitted the individual defendants and sought a recovery from the Montana

company alone for the ore so wrongfully removed, as allegede On June 26, 1899, a second amended and supplemental complaint was filed, also against the Montana company alone, and asking for the same relief. To this an answer was filed, setting up the bond and deed heretofore referred to, and pleading that thereby the plaintiff was estopped from claiming any part of the compromise ground or any mineral contained therein.

Pending this litigation, and on respectively the sixth and twelfth days of December, 1898, orders were issued by the Circuit Court restraining severally each of the parties to this litigation from taking any more mineral from the disputed ground. On the second amended and supplemental complaint a trial was had in which judgment was rendered in favor of the St. Louis company for $23,209. To review this judgment, the Montana company prosecuted a writ of error from the Circuit Court of Appeals of the Ninth Circuit, which writ was dated October 7, 1899, and the judgment was affirmed May 14, 1900. 102 Fed. Rep. 430; 42 C. C. A. 415. The St. Louis company took out a cross writ of error from the Circuit Court of Appeals dated January 30, 1900, and that court reversed the judgment October 8, 1900, and remanded the case for a new trial as to the recovery sought for the conversion and value of certain ores, which had been excluded by the Circuit Court from the consideration of the jury. 104 Fed. Rep. 664; 44 C. C. A. 120. The parties then brought, by separate writs of error, these two decisions of the Court of Appeals to this court, on consideration whereof this court held that the judgment in the Circuit Court was entirely set aside by the second decision of the Court of Appeals, and therefore dismissed both cases on the ground that there was no final judgment. 186 U. S. 24.

Whereupon the Court of Appeals sent down to the Circuit Court a mandate setting aside the judgment in toto, and ordering a new trial. This new trial was held on May 31, 1905, and resulted in a judgment in favor of the St. Louis company for

$195,000, which judgment was affirmed by the Circuit Court of Appeals, to reverse which decision the Montana company sued out this writ of error.

After this last decision by the Court of Appeals the Circuit Court on the application of the St. Louis company set aside the order which restrained it from extracting ore from the disputed territory. Thereupon the Montana company filed its application in this court for a reinstatement of that order and that it be continued in force until the final termination of the litigation.

The St. Louis company filed a motion to dismiss the writ of error sued out by the Montana company on the ground that the jurisdiction of the Circuit Court depended entirely on diverse citizenship, and therefore the decision of the Circuit Court of Appeals was final. The Montana company then made application for a writ of certiorari, which application was passed for consideration to the final hearing of the case.

*Mr. Charles J. Hughes, Jr.,* with whom *Mr. W. E. Cullen, Mr. Aldis B. Browne* and *Mr. Alexander Britton* were on the brief, for plaintiff in error:

The bond, the judgment and the deed are absolutely conclusive of the rights of these parties in the present action in the compromise ground. 2 Black on Judgments, 503–505; *Cromwell* v. *Sac County,* 94 U. S. 351, 354; Freeman on Judgments, 284, and cases cited; *Casey* v. *Penna. Asphalt Pav. Co.,* 109 Fed. Rep. 744; *New Orleans* v. *Citizens Bank,* 167 U. S. 371; *Ball* v. *Trenholm,* 45 Fed. Rep. 588; *S. C.,* aff'd, 114 Fed. Rep. 189.

Where the facts relied on are substantially the same, the fact that a different form or measure of relief is asked in the subsequent action will not deprive the parties of the protection of the prior findings and judgment in their favor. *Green* v. *Rogers,* 158 U. S. 478, 502; *Nat'l F. & P. Works* v. *Oconto C. W. S. Co.,* 113 Fed. Rep. 793, 803.

Any right, fact, or matter in issue and directly adjudicated

upon or necessarily involved in the determination of an action is absolutely *res adjudicata,* and cannot be relitigated between the parties or their privies, whether the claim or demand, purpose, or subject-matter of the two suits be the same or not. *Burk* v. *Beverley,* 1 How. 134; *New Orleans* v. *Citizens' Bank,* 167 U. S. 371, 396; *Sou. Pac. R. Co.* v. *United States,* 168 U. S. 1; *Mitchell* v. *Chicago Nat'l Bank,* 180 U. S. 471; *Sou. Pac. R. Co.* v. *United States,* 183 U. S. 519; *Landen* v. *Merchants' Bank,* 186 U. S. 458; *Russell* v. *Lamb,* 49 Fed. Rep. 770; *Norton* v. *House of Mercy,* 101 Fed. Rep. 384; *Estill Co.* v. *Embry,* 112 Fed. Rep. 882; *Eastern Bldg. & Loan Assn.* v. *Welling,* 116 Fed. Rep. 100; *Ætna Life Ins. Co.* v. *Hamilton Co.,* 117 Fed. Rep. 82; *Green* v. *Thornton,* 130 California, 482; *Betts* v. *Starr,* 13 Am. Dec. 94, and note; *Baxter* v. *New England Marine Co.,* 6 Massachusetts, 277; *Burke* v. *Miller,* 4 Gray, 114; *Chamberlin* v. *Preble,* 11 Allen (Mass.), 370; *Burlen* v. *Shannon,* 90 Massachusetts, 200; *Stockwell* v. *Silloway,* 113 Massachusetts, 384; *Sly* v. *Hunt,* 159 Massachusetts, 151.

The judgment in the specific performance case, though rendered in a state court, was binding in the Federal courts. Constitution of the United States, Art. I, sec. 4; Rev. Stat. § 905.

The judgment in the specific performance case expressly directs a conveyance of the compromise ground by metes and bounds, together with all the mineral therein contained. The most important thing in a mining claim is the mineral therein contained. A strip of barren mountain side thirty feet in width and four hundred feet in length is of no value to anybody for any purpose without the minerals therein contained. The words "together with," in connection with the previously mentioned subject in a deed or power, operate to enlarge, and not to restrain, that which was previously granted. *Winter* v. *Loveden,* 1 Lord Raymond, 267; *Cardigan* v. *Armitage,* 2 Barn. & Cres. 197; *Panton* v. *Taft,* 22 Illinois, 166.

No formal words are necessary in a deed to pass extralateral rights. At common law a deed to real estate passed

every interest which the grantor had in the premises described, unless some interest was expressly reserved therein. The rights transferred by the deed herein are governed by the law of Montana. The common law is in force in the State of Montana unless where repealed either expressly or by some statute in conflict therewith. *Territory* v. *Ye Wan,* 2 Montana, 479; *Territory* v. *Va. Road Co.,* 2 Montana, 96; *Butte Hardware Co.* v. *Sullivan,* 7 Montana, 312; *Palmer* v. *McMasters,* 8 Montana, 192; *Milburn Mfg. Co.* v. *Johnson,* 9 Montana, 541; *Forrester* v. *B. & M. Co.,* 21 Montana, 544, 557; Mont. Civil Code, §§ 1473, 1490, 1491, 1510, 1511, 1513.

The deed in this case is clear, definite and explicit with nothing left to interpretation or conjecture or to be supplied by matters *aliunde* the document itself. The subject-matter of the grant is a patent of the United States issued to the St. Louis mining claim as a location made upon the public mineral domain, without any indication anywhere in it that any portion of the lands conveyed by the patent of the Government is of different date as to its location from any other portion thereof. All any court can do in determining the rights of the parties in a law action such as this is would be to find what is described by the deed and to enforce its terms. There exists in the deed nothing which authorizes a resort to the nature of the property and the circumstances surrounding the execution of the deed for the purpose of ascertaining its meaning. That can only be done when the terms of the deed, its contents, render this necessary in order to determine what is conveyed by it. *Van Ness* v. *City of Washington,* 4 Pet. 232, 285; *Tiernan* v. *Jackson,* 5 Pet. 594; *St. Louis* v. *Rutz,* 138 U. S. 243; 2 Devlin on Deeds, 2d ed., § 836.

The patent in this case is the usual patent, and there is nothing in its terms which permits, suggests, or gives an excuse for investigating the prior history of the territory embraced within the claim as patented or controversies which may have raged, however bitterly, before its issuance, since they are terminated conclusively by its issuance. *Boggs* v.

*Merced Co.*, 14 California, 279; *Waterloo Co.* v. *Doe*, 56 Fed. Rep. 685; *Calhoun Co.* v. *Ajax Co.*, 192 U. S. 499; *Lavignino* v. *Uhlig*, 198 U. S. 443, 445; *Wright* v. *Dubois*, 21 Fed. Rep. 693, 696; *Mining Co.* v. *Tunnel Co.*, 196 U. S. 337, 355; 2 Lindley on Mines, 2d ed., p. 1389, § 778.

*Mr. M. S. Gunn*, with whom *Mr. Arthur Brown, Mr. J. H. Ralston, Mr. Thomas C. Bach, Mr. J. B. Clayberg, Mr. F. L. Siddons, Mr. Ira T. Wight* and *Mr. W. E. Richardson* were on the brief, for defendant in error: .

As to the claim of the plaintiff in error concerning the Federal questions which its counsel deem are involved in this writ, see *Walrath* v. *Champion Mining Co.*, 171 U. S. 293, under which defendant in error is entitled to follow outside its side lines all veins having the same dip, same direction, which apex within its premises to the extreme limit of the discovery vein of the St. Louis. Judge Hunt put that condition to the plaintiff's right to recover in his charge, and the jury have found with us, that the discovery vein extends from the 520-foot plane to the 133-foot plane. As it is established that the St. Louis discovery vein runs lengthwise of the claim and extends from one plane to the other, 520 to 133, the St. Louis Company had a right to follow the Drumlummon or incidental vein through that distance, even if a part of the apex was not within its claims.

The right of the St. Louis Company to follow its vein, although it enters at the side line and departs through the same side line, has been established by this court in other cases, the only condition being that the general direction of the claim be with and along the vein. *Last Chance* v. *Tyler*, 157 U. S. 683. There was an intimation in that case that where the claim and vein were substantially in the same direction the owner of the apex could recover ores on the dip under another claim. See also the *Del Monte case*, 171 U. S. 84; 2 Lindley on Mines, 2d ed., § 584.

Between planes 108 and 133 the vein passes, or is alleged

to pass, from the St. Louis into the Nine Hour claim of the defendant. Passing at an angle, of course the apex would be partly within and partly without the St. Louis. The St. Louis claims no right to follow the surface or any of the surface of the Nine Hour, but, going to the deep on that vein for that 25 feet, the St. Louis says that the ore belongs to it because it, being the older claim, takes the whole of the vein. The vein is indivisible, a unit, an entity. Its width is not uniform, is never uniform in any vein. The ores cannot be divided by any longitudinal demarcation or division. *The Argentine case,* 122 U. S. 484. See also *St. Louis* v. *Montana,* 104 Fed. Rep. 667; *Bunker Hill M. Co.* v. *Empire State M. Co.,* 106 Fed. Rep. 472; *Empire State M. Co.* v. *Bunker Hill M. Co.,* 114 Fed. Rep. 419; *Last Chance M. Co.* v. *Bunker Hill M. Co.,* 131 Fed. Rep. 572; *Empire State M. Co.* v. *Bunker Hill M. Co.,* 131 Fed. Rep. 591; *U. S. M. Co.* v. *Lawson,* 134 Fed. Rep. 774; 2 Lindley on Mines, 2d ed., §§ 583, 594.

No Federal question can be connected with the deed from the owners of the St. Louis to the owners of the Nine Hour of what is known as the "compromise strip." The plaintiff in error has also asked for a writ of certiorari. Such writ (it is claimed) would raise this question of that deed.

There was never any contract, or intention to contract, to sell any property, but simply to fix the boundary line between the St. Louis and the Nine Hour. The St. Louis was to be and continue to be a mining claim, retaining the right to go underneath other claims.

The pleadings, findings of fact and conclusions of law in the specific performance case constitute a complete answer to the claim now made that it was the intention of the parties to the contract that the conveyance should embrace the ore in controversy in this action.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The first question is, of course, the one of jurisdiction. If

the jurisdiction of the Circuit Court depended alone on diverse citizenship then, undoubtedly, the decision of the Court of Appeals was final, and the case could only be brought here on certiorari. On the other hand, if it did not depend alone on diverse citizenship, the decision of the Court of Appeals was not final, and the case is properly here on writ of error. The original complaint alleged the citizenship of the two corporations, plaintiff and defendant, but did not allege the citizenship of the individual defendants. In order to sustain the jurisdiction of the Circuit Court on the ground of diverse citizenship the citizenship of all the parties on one side must be diverse from that of those on the other. So, unless there was a Federal question presented by that complaint, as the citizenship of the individual defendants was not shown, the Circuit Court had no jurisdiction of the case. It may be that this was remedied by the subsequent first and second amended complaints, in which the individual defendants were left out, the citizenship of the two corporations, plaintiff and defendant, alleged, and to which complaints the Montana company, without raising any question of jurisdiction, appeared and answered. *Conolly* v. *Taylor*, 2 Pet. 556; *Anderson* v. *Watt*, 138 U. S. 694. Be that as it may, in view of the fact that this litigation has been twice before this court, has been protracted for many years, involves so large an amount, and also presents questions of Federal mining law, which, though perhaps not necessary for our decision, have yet been elaborately argued by counsel, we are of opinion that if the jurisdiction of the Circuit Court did, after the filing of the amended complaints, depend entirely on diverse citizenship, the case ought to be brought here by writ of certiorari. As either by writ of error or certiorari the decision of the Court of Appeals can be brought before this court, and as each has been applied for, and as the importance of the case seems to demand our examination, it is scarcely necessary to consume time in attempting to decide positively whether there was a Federal question involved, or the jurisdiction depended solely on diverse citizenship. The

writ of error was duly allowed prior to the filing of the record in the first instance, and to avoid any further question of our jurisdiction we allow the certiorari. *Pullman Car Co.* v. *Transportation Co.*, 171 U. S. 138.

We pass, therefore, to a consideration of the merits, and the first question presented by counsel—indeed, as we look at it, the pivotal question—is the proper construction of the bond and deed by which the plaintiff in error claims title to the compromise ground.

The bond described the ground, adding "together with all the mineral therein contained." The deed executed in pursuance of the judicial decree contains the same description, followed by the words above quoted and also the further words given in the statement of facts, "together with all the dips, spurs and angles," etc.

Now, the contention of the defendant in error is that the effect of the compromise followed by the bond and conveyance was simply to locate the boundary line between the two claims, leaving all subsurface rights to be determined by the ordinary rules recognized in the mining districts and enforced by the statutes of Congress.

The argument in favor of this construction is forcibly put by Circuit Judge Gilbert, delivering the opinion of the Court of Appeals, when the case was first presented to that court. 102 Fed. Rep. 430; 42 C. C. A. 415. Without quoting it in full it is to the effect that agreements and conveyances of the whole or parts of mining claims are to be construed in the light of the mining law, as, generally speaking, we construe a contract, not merely by its terms, but having regard to the subject-matter involved and the surrounding circumstances, in order to ascertain the intention of the parties. Particular reference was made to *Richmond Mining Co.* v. *Eureka Mining Co.*, 103 U. S. 839, 846, in which this court held that a line specified in a contract between the owners of contiguous mining claims to be one "continued downward to the center of the earth was not a vertical plane, but must be construed as

extending the boundary line downward through the dips of the veins or lodes wherever they might go in their course toward the center of the earth."

Further, the argument is that the adverse proceedings were maintained by the owners of the Nine Hour claim on the theory that the strip of land so contracted to be conveyed was a portion of that claim; that if the action had gone to judgment, sustaining their contention, the result would have been simply to fix the surface line of division between the two claims, without affecting the subsurface rights. Reference was also made to the suit for specific performance brought by the present plaintiff in error, in which it alleged that the contract had been made for the purpose of settling and agreeing upon the boundary line between the two claims, and that the suit was maintained upon the theory that, as owner of the Nine Hour claim, it owned the compromise ground afterwards conveyed.

We are not insensible to the force of this argument, and also appreciate fully what is said by counsel in reference to the familiarity of the several concurring justices with mining law and contracts and conveyances made under it.

Yet, notwithstanding, we are compelled to dissent from their construction of these instruments, and to hold that something more was intended and accomplished than the mere establishment of a surface boundary line. We premise by saying that nothing can be invoked in the nature of an estoppel from the averments in the pleadings in the suit for specific performance. True, the plaintiff in error alleged that the compromise ground was a part of its mining claim, and that the bond was executed " to settle and compromise the said suit and adverse claims, and for the purpose of settling and agreeing upon the boundary line between" the two claims; but the bond itself, reciting the fact of a settlement and compromise, and an agreement by the contestants to withdraw their objections to the application for a patent, stipulates for a conveyance, after patent, of the compromise ground, "com-

prising a part of two certain quartz lode mining claims, known
as the St. Louis lode claim and the Nine Hour lode claim,"
they being, respectively, the two claims owned by the parties
hereto. Further, the answer denied that the compromise
ground was a part of the Nine Hour lode claim, and alleged
that the then owner of the St. Louis lode claim executed the
bond as a compromise of the adverse claim and suit, and to
enable him to obtain a patent for the whole of his claim.

The facts in the case, as well as the allegations in these plead-
ings, show that the two claims conflicted; that when applica-
tion was made for a patent adverse proceedings were instituted,
and that rather than try the title of the respective locators
to the territory in conflict, and by way of compromise, they
agreed that the owner of the St. Louis claim might proceed
to patent, and then convey the compromise ground to the
grantors of the plaintiff in error.

It must also be noticed that the dispute between the two
claims was not simply in respect to the compromise ground
—at least, testimony offered to prove this was ruled out—
but involved a larger area, and that the disputing parties
settled by the bond, describing what was to be conveyed.

It is undoubtedly true that if the bond had simply described
the surface area or fixed a boundary line between the two claims,
the subsurface and extralateral rights might have been deter-
mined by the mining law. It might have been implied that
there was no intention to disturb the rights given by it.

Further, while it may be true that the words " together with
all the dips, spurs and angles," etc., are generally employed
in conveyances of mining claims in order to emphasize the fact
that not merely the surface but the extralateral rights which
go with a mining claim are conveyed, yet it must be noticed
that in addition to these customary words are these, found in
both the bond and the deed, " together with all the mineral
therein contained," and they cannot be ignored, but must
be given a meaning reasonable and consistent with other parts
of the instruments. It is not satisfactory to say that they

are only equivalent to those that follow, "dips, spurs," etc., that the same thing is meant by each expression. While of course repetition is possible, yet it is not to be expected; and when, in addition to the ordinary words found in conveyances of mining claims, is this extra clause, we naturally regard it as making some further grant.

The scope of this deed would not be open to doubt if only the common law was to be considered. And in this connection it may be remarked that the common law has been kept steadily in force in Montana. "The common law of England, so far as the same is applicable and of a general nature, and not in conflict with special enactments of this Territory, shall be the law and the rule of decision, and shall be considered as of full force until repealed by legislative authority." Laws of Montana, 1871, 1872, p. 388, ch. 13, sec. 1, substantially re-ënacted in Mont. Ann. Code, § 5152. See also *Territory* v. *Ye Wan,* 2 Montana, 478, 479; *Territory ex rel.* v. *Virginia Road Co.,* 2 Montana, 96; *Butte Hardware Co.* v. *Sullivan,* 7 Montana, 307, 312; *Palmer* v. *McMasters,* 8 Montana, 186, 192; *Milburn Mfg. Co.* v. *Johnson,* 9 Montana, 537, 541; *Forrester* v. *B. & Min. Co.,* 21 Montana, 544, 556. By that law a deed of real estate conveys all beneath the surface, unless there be some words of exception or limitation. But the mining laws of both State and Territory were in force, and in construing conveyances of mining claims the provisions of those laws must be taken into account, and may add to or subtract from the rights passing by a common law conveyance of agricultural or timber lands. It is probably not necessary to specify extra-lateral rights in order that a conveyance of a mining claim be operative to transfer them, and yet it is not strange that the custom grew up of naming them for the sake of avoiding the possibility of disputes. While the bond made no mention of extralateral rights, yet in all probability it would have been held to pass them and the court may have thought that the single specification, "all the mineral therein contained," was liable to be construed as narrowing the conveyance so as to

include only the mineral beneath the surface, and therefore required that there should be incorporated in the deed the words "together with all the dips, spurs," etc. Yet in requiring the introduction of these words, which in terms define extralateral rights, it also retained the phrase "together with all the mineral therein contained."

To the suggestion that giving this construction to the bond and conveyance is in effect the granting of a section of a vein of mineral, the answer is that there is nothing impracticable or unnatural in such a conveyance. It does not operate to transfer the vein *in toto*, but simply carves out from the vein the section between the vertical side lines of the ground and transfers that to the grantee. The title to the balance of the vein remains undisturbed.

To the further suggestion that the owner of the apex might be left with a body of ore on the descending vein beyond the further side line of the compromise ground which he could not reach, the answer is that this assumes as a fact that which may not be a fact. The owner of the apex may be the owner of other ground by which access can be obtained to the descending vein, and it also is a question worthy of consideration whether granting a section out from a descending vein does not imply a right reserved in the grantor to pass through the territory of the section conveyed in order to reach the further portion of the vein. Those are questions which need not now be determined. This secondary vein does not appear to have been known at the time of the compromise, and while, of course, there is always a possibility of such a vein being discovered, yet parties are more apt to contract and settle upon the basis of what they know than upon the possibilities of future discovery.

The action of the parties hereto is suggestive, although not of itself decisive. This action for the recovery of ore taken out from beneath the surface of the compromise ground was pending when the suit for specific performance was brought in 1894. Nothing was done in this action from that time until

three weeks after a final decision of the specific performance case by this court, when an amended complaint was filed, and the case thereafter proceeded by ordinary stages to trial and judgment. The original complaint alleged the owner-ship by the St. Louis company of its mining claim and of all veins, lodes or ledges having their tops or apexes inside of its surface boundary lines, with the right to follow those veins, lodes or ledges on the dips or angles outside the side lines of the mining claim. It also alleged that the defendants entered wrongfully upon one of the veins, lodes or ledges having its top or apex within the surface location of the St. Louis claim, and which had in its dip or angle passed outside the side lines of the St. Louis claim and "entered beneath the mining prop-erty claimed or pretended to be claimed by the said defend-ants or some of them, and that in utter disregard of the right or title of plaintiff the said defendants ever since have been and now are extracting and taking therefrom large quantities of coarse rock and ore," etc. In other words, it sought to recover from the Montana company the value of the ore taken by the latter from a vein whose apex was within the surface boundaries of the former's claim, but which in its dip had passed outside the side lines into territory claimed by the Montana company. With that as its claim the litigation was dormant for four years. Now, if it were true that the apex of the vein was within the side lines of the St. Louis claim and the ore taken by the defendant was taken from below the surface of the compromise ground, and all that was accomplished by the compromise and bond was the establishment of a boundary line, leaving subsurface and extralateral rights undisturbed, there was no necessity of postponing the litigation until the question of title to the surface was disposed of. As we have said, we do not mean that this is decisive, because the St. Louis company may have thought that all controversies would be ended if it could once establish that the Montana company took nothing by virtue of the compromise and bond. Still the delay in the litigation is in harmony with the belief that

the words in the bond, "together with all the mineral therein contained," meant all the mineral below the surface.

The disposition of this question compels a reversal of the judgment. It may also effectually dispose of all disputes between the parties, and, therefore, it would be a mere waste of time to attempt to consider other questions which have been discussed with ability and elaboration by counsel.

In view of this conclusion it is also apparent that the order restraining defendant in error from removing ore from the disputed territory ought not to have been set aside.

The judgment of the Court of Appeals is reversed and the case remanded to the Circuit Court with instructions to grant a new trial. Further, the order restraining defendant in error from mining and removing any of the ore in dispute will be reinstated and continued in force until the final disposition of the case.

*Judgment reversed and restraining order reinstated.*