MONTANA MINING CO., Limited, v. ST. LOUIS MIN. & MILL. CO. OF MONTANA.

(Circuit Court of Appeals, Ninth Circuit. March 1, 1909.)

No. 1,574.

INJUNCTION (§ 72*)—GROUNDS—PROTECTIVE REMEDY.

Under Code Civ. Proc. Mont. 1895, § 871 (Rev. Codes, § 6643), which provides that, "when it appears by affidavit that the defendant during the pendency of an action threatens or is about to remove or to dispose of his property with intent to defraud the plaintiff, an injunctive order may be granted to restrain the removal or disposition," when it appears from the decisions in prior litigation that a mining company in a pending suit will

---

probably recover a large judgment against another company for the value of ore extracted from veins owned by plaintiff, a court is authorized to grant an injunction restraining the defendant from extracting and selling the ore from its mine, where it is shown by affidavit that the result would be that it would not have sufficient property remaining to respond to the judgment.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 138; Dec. Dig. § 72.*]

Appeal from the Circuit Court of the United States for the District of Montana.

Wm. Wallace, Jr., and Carpenter, Day & Carpenter, for appellant.

Gunn & Rasch, Clayberg & Horsky, and Walsh & Nolan (M. S. Gunn and T. J. Walsh, of counsel), for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge.   A controversy arose in the year 1884 between the owners of the St. Louis lode claim and the Nine Hour lode claim, in the state of Montana, concerning a disputed boundary between the two claims.   The controversy involved the possession and ownership of a strip of ground 30 feet wide, and including an area of about 12,844 square feet.   At the time of applying for a patent the locators of the St. Louis claim included in their survey a portion of the ground claimed by the owners of the Nine Hour claim.   The latter made an adverse claim, and brought an action to determine the rights of the parties thereto.   Before the case was tried the suit was compromised, and a bond executed by the owner of the St. Louis claim to the owners of the Nine Hour claim, under which it was agreed that the owner of the St. Louis claim should include in the survey of that claim the compromise ground, and, as soon as a patent issued to the St. Louis claim, the owner of that claim would then convey to the owners of the Nine Hour claim the strip of land embraced in the compromise.

The owner of the St. Louis claim, having obtained a patent, refused to make the conveyance.   The Montana Mining Company having become the owner of the Nine Hour claim, and the St. Louis Mining & Milling Company the owner of the St. Louis claim, the former company brought suit against the latter company for the specific performance of the contract.   A decree was rendered in favor of the Montana Company (Montana Mining Co. v. St. Louis Mining & Milling Co., 20 Mont. 394, 51 Pac. 824; St. Louis Mining & Milling Co. v. Montana Mining Co., 171 U. S. 650, 19 Sup. Ct. 61, 43 L. Ed. 320), and in pursuance of this decree a conveyance of the ground was executed by the St. Louis Company to the Montana Company.

There then arose a controversy as to the extralateral rights of the St. Louis Company in what has since been designated the "compromise ground."   The ground has been found to be very valuable, and the controversy respecting the rights of the parties thereto has been the subject of prolonged litigation.   Montana Mining Co. v. St. Louis Mining & Milling Co., 102 Fed. 430, 42 C. C. A. 415; St. Louis Min-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ing & Milling Co. v. Montana Mining Co., 104 Fed. 664, 44 C. C. A. 120, 56 L. R. A. 725; Montana Mining Co. v. St. Louis Mining Co., 204 U. S. 204, 27 Sup. Ct. 254, 51 L. Ed. 444. In the latter case the Supreme Court held that the bond of the owner of the St. Louis claim and the conveyance of the compromise ground by the St. Louis Company, "together with all the mineral therein contained," and "all the dips, spurs, and angles," did not merely locate a boundary between the two claims, leaving all surface rights to be determined by the ordinary rules recognized in mining districts of Montana and enforced by statutes of Congress, but as conveying all mineral below the surface, including that in a vein therein which apexed in the unconveyed land of the grantor. The court further said:

"To the suggestion that giving this construction to the bond and conveyance is in effect the granting of a section of a vein of mineral, the answer is that there is nothing impracticable or unnatural in such a conveyance. It does not operate to transfer the vein in toto, but simply carves out from the vein the section between the vertical side lines of the ground and transfers that to the grantee. The title to the balance of the vein remains undisturbed.

"To the further suggestion that the owner of the apex might be left with a body of ore on the descending vein beyond the further side line of the compromise ground which he could not reach, the answer is that this assumes as a fact that which may not be a fact. The owner of the apex may be the owner of other ground by which access can be obtained to the descending vein, and it also is a question worthy of consideration whether a section out from a descending vein does not imply a right reserved in the grantor to pass through the territory of the section conveyed in order to reach the further portion of the vein. Those are questions which need not now be determined. This secondary vein does not appear to have been known at the time of the compromise, and while, of course, there is always a possibility of such a vein being discovered, yet parties are more apt to contract and settle upon the basis of what they know than upon the possibilities of future discovery."

It appears from the complaint in the present action that the suggestion made to the Supreme Court that the owner of the apex might be left with a body of ore on the descending vein beyond the further side line of the compromise ground was what would have been the situation had not the Montana Company prior to that time entered into and upon that portion of the vein underneath the surface of the Nine Hour claim and east of the east boundary line of the compromise ground, and extracted the quartz, rock, and ore therefrom, and removed and converted the same to its own use and benefit, and had thereafter continued to extract the quartz, rock, and ore, and remove and convert the same to its own use and benefit in the alleged value of $1,000,000. It appears further that on September 16, 1903, the St. Louis Company brought a suit at law against the Montana Company to recover damages in the sum of $200,000 for ores so extracted and removed by the latter company from this vein east of the eastern side line of the St. Louis claim and underneath the surface of the Nine Hour claim.

This complaint was thereafter amended to conform to the adjudication in the course of the litigation concerning the compromise ground and the work of the Montana Company in extracting and removing ore therefrom. The first amended and supplemental complaint was filed November 21, 1898, in which damages were alleged at $200,000

as in the original complaint. The second amended and supplemental complaint was filed June 26, 1899, in which it was alleged that since the filing of the original complaint and up to the 26th day of June, 1899, the Montana Company had extracted ore from the premises and vein described amounting in value to $400,000, and a judgment was demanded for $600,000. The third amended and supplemental complaint was filed December 2, 1907, in which it was alleged that the damages sustained by the St. Louis Company by the operations of the Montana Company in the vein east of the easterly side line of the St. Louis claim had amounted to $1,000,000.

In the original complaint the action was on the part of the St. Louis Company to recover from the Montana Company damages for the extraction and removal of ore from any vein having its top or apex within the surface boundaries of the St. Louis claim. In the first amended and supplemental complaint, filed November 21, 1898, the St. Louis Company alleged its ownership of the ores in all veins apexing within the surface boundaries of the St. Louis claim, particularly describing such boundaries, and saving and excepting therefrom the surface of the compromise ground described in the amended and supplemental complaint. This was in accordance with the decision of the courts in the action brought by the Montana Company against the St. Louis Company for the specific performance of the agreement to convey the compromise ground to the Montana Company, in which action specific performance of the agreement by the St. Louis Company was decreed. Montana Mining Co. v. St. Louis Mining & Milling Co., 20 Mont. 394, 51 Pac. 824; St. Louis Mining & Milling Co. v. Montana Mining Co., 171 U. S. 650, 19 Sup. Ct. 61, 43 L. Ed. 320.

The present action is a suit in equity ancillary to the suit at law brought by the St. Louis Company against the Montana Company to enjoin and restrain the Montana Company from removing or extracting any ore from within or underneath the compromise strip as the same is described in the complaint, and from conducting any mining operations therein, or from selling or disposing of any ore extracted therefrom until the final determination of the suit at law; and this is an appeal from a temporary restraining order in substantially the same terms as the injunction prayed for in the complaint, but limited to continue during the pendency of the suit and until the further order of the court.

It is alleged in the complaint that in the litigation between the parties thereto, and in the course of the action referred to and the proceedings had therein, it has been determined and adjudicated that the St. Louis Company is the owner of and entitled to all the ores in the said vein east of the east line bounding plane of the compromise strip, to the extent that the apex of said vein is wholly or partly in said St. Louis claim as patented, and that in the course of trials theretofore had in the said action, it was conceded by the Montana Mining Company that large quantities of ore have been extracted by the said company from within the said territory, that is to say, from that part of said vein the apex of which is wholly or partly in said St. Louis claim as patented in the said Nine Hour claim and east of the east line

of the compromise strip, and that there remains only to be determined in the said action the exact quantity of ore so extracted from the said territory and the value thereof.

It is alleged that the Montana Company is engaged in extracting, removing, and shipping the ore from within the compromise ground, and has already shipped, sold, and disposed of a large quantity of valuable ore so extracted from the ground, and that it intends to continue extracting, removing, and shipping the ore within the said vein and underneath the said compromise strip. That if it is allowed to continue extracting and removing the ore from underneath said ground it will have removed and disposed of so much thereof before a trial of the said action can be had that there will not remain therein ore sufficient, with such other property as the defendant may own within the state of Montana or the United States, as shall be sufficient to satisfy such judgment as your orator will recover in the said action.

It is further alleged in the complaint that the St. Louis Company has caused a large amount of development work to be done beneath the surface of the compromise strip, for the purpose, among others, of disclosing the identity and continuity of the vein from the apex within the boundary of the St. Louis claim to and underneath the surface of the Nine Hour claim. This development work was done under order of the court, and such order was made by the court upon showing the necessity for such development work; that it is essential to complainant that such development work should remain undisturbed until the final disposition of the action, for the reason that in order to establish the claim made by the complainant in said action it will be necessary that the witnesses or some of them go through said workings and examine the conditions on the ground as disclosed therein; that if the Montana Company is permitted to continue extracting from the vein underneath the compromise ground the evidence upon which complainant must lawfully rely to establish the course of said vein and its width and extent and the quantity and value of the ore extracted from the said vein beyond the said compromise strip will be utterly destroyed.

To the complaint the Montana Company answered, denying many of the allegations of the complaint and admitting others, but averring that it will contend, as it always has contended, that the St. Louis Company has no right, title, or interest in any of the ores or minerals situated beneath the surface of the Nine Hour claim.

It is contended by the appellant that the restraining order entered in this case was granted by the court without authority. Section 871 of the Code of Civil Procedure of 1895 of Montana (Rev. Codes, § 6643) provides, among other things:

"When it appears, by affidavit, that the defendant during the pendency of the action, threatens, or is about to remove, or to dispose of his property, with intent to defraud the plaintiff, an injunction order may be granted to restrain the removal or disposition."

Without entering into a discussion concerning the construction placed upon a similar provision in the New York Code of Procedure, it is sufficient to say that we are satisfied that the statute authorizes a

restraining order under circumstances such as are presented in this case. High on Injunctions, § 1407; Morey v. Ball, 90 Ind. 450; Lee v. Gross, 126 Ind. 102, 25 N. E. 891; Rubens v. Joel, 13 N. Y. 488. The probability that the St. Louis Company will recover a judgment against the Montana Company for ore extracted and removed by the latter company from the vein in controversy beyond the further side line of the compromise ground is foreshadowed, we think, in the decision of the Supreme Court in Montana Mining Co. v. St. Louis Mining & Milling Co., 204 U. S. 204, 218, 27 Sup. Ct. 254, 51 L. Ed. 444. Under all the circumstances of the case we think there was no abuse of the discretion of the court in the granting of the order.

The order of the lower court is affirmed.